WALLER v. SKELTON *et al.*

(*Nashville*, December Term, 1947.)

Opinion filed May 3, 1948.

McReynolds & Marks, of Clarksville, for Waller.

Goodlett & Goodlett, of Clarksville, and Lewis C. Payne, Cecil Sims and Judson Harwood, all of Nashville, for Skelton and others.

Mr. Chief Justice Neil delivered the opinion of the Court.

The plaintiff Waller, a young Negro man, recovered a judgment for $18,000 in the Circuit Court of Montgomery County for personal injuries which he received in an automobile accident. The defendant moved for a new trial upon 11 grounds. The first two grounds are (1) that there is no evidence to support the verdict and (2) that the weight of the evidence preponderates against the verdict and in favor of the defendants. The third ground is as follows: "The verdict of the jury evinced passion, prejudice and caprice. Defendants are advised that this is the largest verdict ever rendered by a jury in

Montgomery County for personal injuries. The sum is so grossly excessive as to shock public conscience. The only explanation of the amount thereof, is that it was the result of prejudice against taxi drivers as a class, or against defendants.''

All other grounds related to alleged errors of the Trial Judge in refusing to grant certain special requests.

The Court overruled the motion in its entirety except ground No. 3 above referred to. In passing upon that ground of the motion it is clear that he thought the verdict was excessive. He suggested a *remittitur* of $13,000. His comment on the excessiveness of the verdict is as follows: ''In the case of *Eddie Lawrence Waller* v. *Solia Skelton and Albert Roberts d/b/a Your Cab Company*, I suggest a *remittitur* of $13,000.00 and if it is not accepted a new trial will be granted. I am not saying that the verdict in this case evidenced that the jury acted with prejudice or passion. I don't understand just what was on their minds unless it was inflation and the high cost of living. I cannot account for it. Dr. Pannell's testimony was that the injuries were permanent and Dr. Workman testified that the plaintiff might recover. I have seen many such injuries and I believe the plaintiff will recover. The verdict is otherwise approved.''

It will be noted that the Trial Judge refrained from expressing the view that the jury's verdict indicated passion or prejudice. He simply contented himself by saying, ''I cannot account for it,'' and in conclusion said, ''I have seen many such injuries and I believe the plaintiff will recover.''

The foregoing statement was made immediately after counsel had argued the motion for a new trial.

The *remittitur* was accepted under protest and an appeal prayed and granted to the Court of Appeals. Immediately after the Trial Judge had overruled the motion, he made this additional statement: "My attention has just been directed to the fact that the wording of ground 3 of the motion for a new trial appears to come within Section 8987 of the Code of Tennessee and I direct that the order on this motion and the suggesting of the *remittitur* showed that my action is based on grounds providing for acceptance and making of a *remittitur*, under protest, in accordance with Section 8987 of the Code of Tennessee."

The minute entry made in pursuance of the Court's direction is as follows: "And upon consideration, the Court does find that Ground III of said motion is well taken in that the verdict of the jury in favor of plaintiff is so excessive as to indicate passion, prejudice or unaccountable caprice on the part of the jury, and the Court doth suggest a *remittitur*, on that account, on the part of the plaintiff in the amount of Thirteen Thousand Dollars ($13,000.00) with the *proviso* that in case the plaintiff refuses to make such *remittitur*, a new trial will be awarded."

Both the plaintiff and the defendants appealed to the Court of Appeals and assigned numerous errors.

The plaintiff appealed solely upon the ground that the Circuit Judge was in error in directing the *remittitur*. The defendants complain of many errors by the Trial Court, all of which were considered and overruled by the Court of Appeals. They are not now important. The plaintiff's assignment was sustained and an order made restoring the judgment to $18,000.

The defendants have filed a petition for *certiorari* complaining of this action of the Court of Appeals. There are five assignments of error, but they singly and collectively involve the one question above mentioned.

The Court of Appeals, in an able and exhaustive opinion by Judge FELTS, discussed the evidence bearing upon the nature and extent of plaintiff's injuries. The Court disagreed with the Trial Judge as to the weight to be given to the testimony as to the seriousness of plaintiff's injuries and especially the probative value of medical experts who treated the plaintiff. In discussing this phase of the testimony, the Court said: ''The same thing is true in the case before us. It would seem that the learned Trial Judge reached his conclusion as to the excessiveness of the verdict largely because of his doubt or distrust of the expert testimony as to the permanency of plaintiff's injuries, and because of his view that it was not proper to consider the inflation and the high cost of living in determining the amount of damages necessary to compensate for plaintiff's injuries. But for these two errors his Honor doubtless would have approved the amount as he did the verdict in all other respects.''

Counsel for the petitioners insist that the Court of Appeals in restoring the $13,000 which the Trial Court had ordered remitted, and in affirming the original judgment for $18,000, committed prejudicial error for the following reasons:

''1. The record shows without dispute that the learned Circuit Judge granted the *remittitur solely* because in his opinion the amount of the verdict was un-warranted by the proof relating to the extent of the respondent's in-

juries, and the *remittitur* was ordered upon the *sole* and *exclusive* ground that the verdict was excessive.

2. The learned Circuit Judge expressly held that his *remittitur* was not based upon any conclusion of prejudice or caprice on the part of the jury.

"3. After making the above unqualified rulings the learned Circuit Judge, apparently in an effort to accommodate counsel as to enable an appeal to be taken on the *remittitur* and without drawing the proper distinction between a *remittitur* predicated upon the excessiveness of the verdict and the statutory *remittitur* predicated solely upon passion, prejudice or unaccountable caprice on the part of the jury, directed that his order of *remittitur* be entered under the statute rather than upon the ground upon which it was actually predicated.

. . . . . . .

"Petitioners earnestly insist that the learned Court of Appeals had no jurisdiction whatsoever to act upon the *remittitur* as one granted under Section 8987 of the Code where the record upon its face affirmativly discloses that the Circuit Judge's action was not in fact taken under the statute even though he directed that the order show otherwise. Under such an admitted state of facts the Court of Appeals should have either dismissed the respondent's appeal or at most remanded the case to the Circuit Court of Montgomery County for the respondent to elect whether he would accept the *remittitur* or have a new trial granted."

It is argued by petitioners that a *remittitur* for mere excessiveness "fails to come within the provisions of Section 8987 of the Code"; that the appellate court will not be controlled by a minute entry when the bill of exceptions affirmatively shows that it contradicts statements

made by the Trial Judge when he overruled the motion for a new trial.

Code Section 8987 provides for review by the Court of Appeals of alleged errors by the Trial Judge in suggesting a *remittitur*. It reads as follows: "In all jury trials had in civil actions, after the verdict has been rendered, and on motion for a new trial, when the Trial Judge is of the opinion that the verdict in favor of a party is so excessive as to indicate passion, prejudice, corruption, partiality, or unaccountable caprice on the part of the jury, and a *remittitur* is suggested by him on that account, with the proviso that in case the party in whose favor the verdict has been rendered refuses to make the *remittitur*, a new trial will be awarded, the party in whose favor such verdict has been rendered may make such *remittitur* under protest, and appeal from the action of the trial judge to the court of appeals; and if, in the opinion of said court of appeals, the verdict of the jury is not so excessive as to indicate passion, prejudice, partiality, corruption, or unaccountable caprice on the part of the jury, and the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the court of appeals for the full amount originally awarded by the jury in the trial court."

We think the weight of authority is generally to the effect that the judgment of a Circuit Judge is rendered when it is ordered or pronounced in open court, and that a minute entry is evidence of the action taken by the court. The last expression of this Court upon this question is found in *Southern Mortgage Guaranty Corporation* v. *King*, 168 Tenn. 309, at page 312, 77 S. W. (2d) 810, at page 811, wherein Mr. Justice CHAMBLISS

said: "It is to be observed that the court did not in the *Jarratt Case* [*Jackson* v. *Jarratt*, 165 Tenn. 76, 52 S. W. (2d) 137] reject, but recognized, the general rule that (1) a judgment is 'rendered' when ordered or pronounced by the court, and that (2) an order *nunc pro tunc*, when made in the exercise of a proper discretion, and with due regard to the rights of others affected, will operate to date the judgment back to the date of actual rendition."

The Court, in making further reference to the *Jarratt Case*, said, on page 314 of 168 Tenn., on page 811 of 77 S. W. (2d) that "the Court speaks authoritatively only through its records," and that "no recovery or other action may be based on a judgment, nor need any relief from it be sought, until the judgment 'rendered' has been entered, so as to give it binding effect as a judicial act."

We are here concerned with the sole determinative question as to what constitutes "rendition of judgment." The judgment that was effective as between the parties was the suggestion of the *remittitur* and if not accepted by the plaintiff a new trial would be ordered. Counsel for petitioners say that the ground for the *remittitur* was *solely* because of excessiveness, and that the Trial Judge caused the minute entry to recite an untruth to the effect that the *remittitur* was because of "unaccountable caprice" in "an effort to accommodate counsel so as to enable an appeal to be taken under Code Section 8987."

The statement upon which petitioners rely as indicating the Court's reason for suggesting the *remittitur* is found in the bill of exceptions, and is to the effect that the verdict was excessive. But this was not all of the statement. The bill of exceptions shows that there was but one comment by the court. Immediately following

442

the above statement, the Court's attention was challenged to the fact that the defendant's motion for a new trial complained of the verdict only because its excessiveness resulted from *unaccountable caprice.* He thereupon directed that the minute entry show that he suggested the *remittitur* because the verdict of the jury resulted from *unaccountable caprice.*

 While the Trial Judge appears to have made statements which were contradictory as to the reasons which prompted his action, we must accept as the true and determinative reason the one he expressly directed should be made a part of the minute entry. There are two reasons which justify this conclusion: (1) the Trial Judge evidently changed his mind when the substance of ground No. 3 was called to his attention, as he had a right to do, and (2) we will not presume that he entered upon the minutes a judgment which he knew was not subject to review by the appellate court, thereby inducing the plaintiff to act to his own injury. *Rice-Stix Dry Goods Co.* v. *Self,* 20 Tenn. App. 498, 101 S. W. (2d) 132; *Chumley* v. *Anderton,* 20 Tenn. App. 621, 103 S. W. (2d) 331. The presumption is to the contrary. The judgment derives its force from what the Trial Judge actually did, as shown by the minutes, which was final and conclusive as between the parties.

 Moreover, in construing the Court's opinion, it is our duty to reconcile conflicting statements in a manner which favors the right of appeal other than to the contrary.

In *Bozeman* v. *Naff,* 155 Tenn. 121, 124, 290 S. W. 981, 983, it was held that if doubt arises as to the right of appeal "the doubt should be resolved in favor of the right of appeal."

While we have often looked to the bill of exceptions to determine if the Trial Judge has or has not approved the verdict of the jury, his approval being a necessary requisite to appellate review, and that certain affirmative facts prevail over minute entries of the court, there is no case in which mere informal opinions of the Trial Judge are said to prevail over his final judgment. This is especially true where the minute entry is unmistakable as to the intention of the court.

In Freeman on Judgments, Vol. 1, page 6, it is said: "In the case of a trial court, a judgment must be distinguished from an opinion. The latter is the informal expression of the views of the court and cannot prevail against its final order or decision. While the two may be combined in one instrument the opinion forms no part of the judgment. So, as elsewhere shown, there is a distinction between the findings and the conclusions of a court and its judgment. While they may constitute its decision and amount to the rendition of a judgment they are not the judgment itself. They amount to nothing more than an order for judgment, which must, of course, be distinguished from the judgment."

In *Carter* v. *Pickwick Greyhound Lines*, 166 Tenn. 200, 60 S. W. (2d) 421, 424, it was said: "In deciding the matter, the circuit judge is not bound to give any reasons, any more than the jury itself is bound to do so. If he does give reasons for his action, this court looks to them only for the purpose of determining whether he passed upon the issues, and was satisfied or dissatisfied with the verdict thereon."

■ Where it appears, as it does in the instant case, that the opinion of the Trial Judge, or a pertinent part thereof, is made a part of the judgment itself, as shown

by a minute entry, and is determinative of appellate jurisdiction, we must give it effect to the exclusion of any apparently contradictory statements.

In *Jackson* v. *Jarratt, supra* [165 Tenn. 76, 52 S. W. (2d) 138], it was said that "the court speaks authoritatively only through its records," citing *Fraker* v. *Brazelton*, 80 Tenn. 278, 280, and *State* v. *True*, 116 Tenn. 313. In the *Fraker Case* it was held, "A decree, before enrollment and signing of the minutes, is not binding on the court or the parties." The holding in the *True Case* is to the same effect.

In *Diamond* v. *State*, 123 Tenn. 348, 363, 131 S. W. 666, 669, there was a plea in abatement to the indictment, which was made a part of the bill of exceptions, and complaint was made that the Trial Judge committed error in rendering judgment on the plea without the intervention of a jury, and the Court said: "The minutes of the court, as sent up, show no action by the trial judge upon the plea in abatement ·. . . *We cannot look to recitals in the bill of exceptions upon this subject.*" (Italics ours.)

It thus appears that in this case there was a refusal to look to the bill of exceptions for determinative facts which might have caused a reversal of the case. We think the court speaks "authoritatively" in all cases by minutes, which records a judgment that is understood or approved, unless the bill of exceptions show a positive disapproval. The judgment entered upon the minutes is always presumed to be the one actually rendered by the court, "and this presumption obtains no matter how erroneous the judgment so entered may be, unless such presumption be overcome by evidence of the character above mentioned." *Calnane* v. *Calnane*, 223 Mo. App. 381, 17 S. W. (2d) 566, 567. Compare *Page* v. *Turcott*,

179 Tenn. 491, 167 S. W. (2d) 350; *Moore* v. *Perry*, 13 Tex. Civ. App. 204, 35 S. W. 838; *Connor* v. *McAfee*, (Tex. Civ. App.), 214 S. W. 646.

 We think the Court of Appeals was correct in its interpretation of the judgment of the Trial Judge, also in ruling that there was no evidence to sustain his action in suggesting the *remittitur*. No one contends that the jury's verdict was corrupt; and there is no evidence that it resulted from unaccountable caprice. In *State* v. *Then*, 114 N. J. L. 413, 177 A. 87, 89, it is held "capriciously" is synonymous with "arbitrarily," which is defined as "without fair, solid, and substantial cause; and without reason given; without any reasonable cause." Vol. 6, Words and Phrases, Perm. Ed., page 125. See also Webster's Dictionary wherein it is said, "Caprice emphasizes the lack of motivation, and implies a certain willfulness or wantonness."

 While the verdict in favor of this Negro man is unusually large, it has not the shadow or taint of illegality upon it. Under the statute full authority is conferred upon the Court of Appeals to set aside the *remittitur* and restore the original judgment. In doing so the Court committed no error.

*Certiorari* denied.

All concur.