Charles W. **SPEIGHT**, Commissioner of Highways for the State of Tennessee, Petitioner-Appellant,

v.

W. T. **NEWPORT** and wife, Lillian Newport, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

June 29, 1973.

Certiorari Denied by Supreme Court Nov. 19, 1973.

David M. Pack, Atty. Gen. and Russell G. Lazenby, Jr., Asst. Atty. Gen., Nashville, for petitioner-appellant.

Camp & Roney, McMinnville, for defendants-appellees.

## OPINION

PURYEAR, Judge.

This is a condemnation suit wherein the Commissioner, acting for and on behalf of the State of Tennessee, acquired 9.70 acres of land in Warren County, Tennessee, for the purpose of relocating a portion of U. S. Highway 70 near the City limits of the City of McMinnville.

The only question presented for determination by the trial Court was the amount of compensation to be paid to the owners, W. T. Newport and wife, Lillian Newport, for the taking of said land.

The case was tried before the Circuit Judge and a jury on June 21, 1972, as a re-sult of which trial the jury awarded $8,000.00 as actual value of the land taken and awarded no amount as incidental damages to remainig land of the defendants.

The landowners, who were defendants in the Court below, filed a motion for new trial upon the grounds that the verdict rendered by the jury was inadequate to compensate them in which motion for new trial the landowners also moved for an additur.

This motion for new trial was argued by counsel and considered by the trial Judge on September 19, 1972, at which time the trial Judge concluded and announced that he would not approve the verdict of $8,000.00 but the minimum verdict which he would approve was $12,000.00, therefore, an additur of $4,000.00 was suggested by the trial Judge which additur was accepted and made by the Commissioner under protest and this appeal resulted pursuant to the additur statute, which is T.C.A. 20–1330.

The Commissioner has filed a single assignment of error insisting that the trial Judge committed prejudicial error in suggesting the additur and this presents to us the sole question of whether the verdict of the jury should have been increased to the extent of $4,000.00 or whether the case should be reversed to that extent and all or part of the additur remitted pursuant to T.C.A. 20–1330, supra.

The evidence shows that the landowners, Mr. and Mrs. Newport, owned a tract of land near the City limits of McMinnville, Tennessee, consisting of 31.83 acres, which they purchased on October 29, 1968, for the sum of $25,000.00, which land had no improvements on it except a barn.

The evidence further shows that, after taking 9.70 acres for the purpose of relocating U. S. Highway 70, the original tract of land was divided by the new highway leaving 19.40 acres on the north side thereof and 2.73 acres on the south side thereof.

Only three witnesses testified as to the amount of damages sustained by the landowners by reason of such taking, which oc-

curred on September 20, 1969. These three witnesses were all experts, two of whom were Hobart Lewis and Clyde Green, who testified on behalf of the landowners, and Barton Smith, who testified on behalf of the Commissioner.

Mr. Lewis, a real estate agent, testified that on the date of taking, the fair, cash market value of the total tract of land before taking was $63,660.00 and that the value of the remaining land after taking was $41,530.00, therefore, he testified that, in his opinion, the total damages amounted to $22,130.00 of which $19,400.00 was allocated as the value of land taken and the remainder of $2,730.00 was allocated as incidental damages to the remaining land.

Mr. Green, a real estate broker, testified that, in his opinion, the fair, cash market value of the total tract of land before taking was $50,928.00, reaching this estimate of value upon the basis of $1,600.00 per acre.

This witness also testified that, in his opinion, the fair, cash market value of the land after taking was $33,224.00 and therefore, the total damages by reason of such taking amounted to $17,704.00, of which amount he allocated $15,520.00 as the fair, cash market value of the land taken and $2,184.00 as incidental damages to the remaining land.

Mr. Smith, an expert appraiser employed by the State and who has a background in the real estate business, testified that, in his opinion, the fair, cash market value of the entire tract of land before taking was $25,000.00 and that the fair, cash market value of the land taken was $7,500.00. This witness also testified that incidental damages to the remaining land was $400.-00, which he estimated was the amount necessary to do some fencing on said remaining land.

He also testified that, in his opinion, the remaining land on the north side of the new highway was incidentally benefited by the construction of said highway to the extent of $2,200.00.

Although the practice of suggesting remittiturs has long been sanctioned in Tennessee, even before the first of our remittitur statutes was enacted in 1911, the practice of suggesting additurs is relatively new in this State and we have little, if any, precedent to guide us with the exception, however, of decisions of this Court and the Supreme Court on the question of remittiturs which are, by analogy, just the reverse of additurs. Therefore, the process of reasoning applied to remittiturs may be applied in reverse to additurs.

In Stark v. Yost (1959), 47 Tenn.App. 28, 334 S.W.2d 954, which involved a review of the trial Judge's action in suggesting a remittitur, this Court said:

"It has been said so many times in cases wherein the question of the excessiveness of the verdict is at issue, that the Trial Court should not interfere with the jury verdict on the ground of excessiveness unless the amount of the verdict is beyond the range of reasonableness. This simply means nothing less than the conscience of the Court must come into play when considering the reasonableness of a jury verdict and it is his duty to order a remittitur in the event he feels he could not conscientiously approve the amount as fixed by the jury verdict. Waller v. Skelton, 186 Tenn. 433, 445, 211 S.W.2d 445; American Lead Pencil Co. v. Davis, 108 Tenn. 251, 66 S.W. 1129; Turner v. Turner, 85 Tenn. 387, 3 S.W. 121; Streetman v. Richardson et al., 37 Tenn.App. 524, 266 S.W.2d 838. In making a determination upon an assignment of error relative to excessiveness of a verdict, we have great respect for the oft repeated statement in our Opinions and in the Opinions from other jurisdictions that—

'The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the the evidence.' Reeves v. Catiganani, 157

Tenn. 173, 7 S.W.2d 38, 39. Monday v. Millsaps [37 Tenn.App. 371, 264 S. W. 2d 6], supra.

American jurisprudence, Vol. 15, Sec. 205, p. 622, is quoted with approval in many of our cases, where it is said:

'Moreover, the question of the excessiveness of a verdict is generally one for the determination of the trial court in the first instance, and its action in granting or refusing to grant a new trial on that ground will not be disturbed on appeal unless an abuse of discretion is shown.' Monday v. Millsaps, supra." (Supra, 334 S.W.2d p. 958)

■ There is no good reason why the same rule as that hereinabove quoted should not apply when an additur is ordered by the trial Court and being considered in the appellate courts.

Moreover, there is still another reason why we must affirm the judgment of the trial Court.

■ When the trial Judge suggested the additur, counsel for the State had two choices: (1) Refuse to accept the additur, whereupon the Court would have granted a new trial to be had before a jury, or (2) make the additur under protest and appeal.

Since counsel for the State decided to follow the second course instead of the first, this amounted to a waiver of the right to again try the issue before a jury and therefore, the issue presented on the question of additur became one which was decided by the trial Judge without intervention of a jury and this action is reviewed here pursuant to T.C.A. 27–303, with the usual presumption that the judgment of the trial Court is correct unless the evidence preponderates against it.

■ In reviewing the evidence in this case we are convinced, as the trial Judge

was, that the jury attached too much weight to the fact that the landowners paid only $25,000.00 for the entire tract of land about eleven months before the date of taking.

On this question, the following testimony of Mr. Green is very significant:

"REDIRECT EXAMINATION

By: Mr. Camp:

Q. I believe it has already been established the date that Newport bought it from Myers, which was approximately nine months before the date of taking or something like that, is that correct?

A. Yes sir.

Q. At the time he bought it—at the time Mr. Newport bought it, do you have an opinion as to—at the time he bought the thirty-one point eighty-three acres—do you have an opinion as to the value of the thirty-one point eighty-three acres?

A. Yes sir.

Q. What in your opinion was this value at the date he bought it?

A. The whole thirty-one point eighty-three?

Q. Yes.

A. Fifty-thousand, nine hundred and twenty-eight dollars.

Q. Thank you. Come down.

THEREUPON

RECROSS EXAMINATION

By: Mr. Bonner:

Q. Mr. Green, that opens up another Pandora's box. Were you aware at the time Mr. Newport bought this property that these right of way plans were printed and this right of way was staked and

that the property was already being acquired?

A. No sir, I knew that there was a road being talked about, but as far as knowing it had been surveyed and staked, I didn't know.

Q. With proof that in this record that these plans were printed on July the 15th, 1968, indicating nine and seven tenths of an acre to be acquired from Mr. Myers's land and that Mr. Newport did not buy the property till October 29th, 1968, are you still of the opinion the property would have been worth, as you say, fifty thousand plus dollars, notwithstanding the fact that he only paid twenty-five for it?

A. Yes sir.

Q. How do you account for that, Mr. Green?

A. I believe that the property was worth that on account of the location, it's close to town as it was.

Q. And the fact that a new road was coming through is that correct?

A. Give or take on the road, whether the road was or wasn't." (B. of E. pp. 49–50–51)

The landowners' other witness, Hobard Lewis, also testified that he had studied land of this nature and location, that he knew by the location that good things always happen to land near the city and this land was located where good things were bound to happen to it.

We are satisfied that the trial Court reached a correct result in this case, therefore, the assignment of error is overruled and the judgment is affirmed.

The costs of this appeal will be paid by the State.

SHRIVER, P. J., and TODD, J., concur.