**Lloyd J. KAISER, Plaintiff-Appellant,**

v.

**Reid Edwin CANNON,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section.

June 27, 1975.

Certiorari Denied by Supreme Court
Nov. 11, 1975.

Wilkes Coffey, Jr., Murfreesboro and Daniel B. Boone, Louisville, Ky., for plaintiff-appellant.

Schulman, McCarley, Hollins & Pride, Nashville, for defendant-appellee.

## OPINION

DROWOTA, Judge.

This case presents the issue whether additur as applied to a non-consenting plaintiff violates the right to trial by jury guaranteed by Article 1, § 6 of the Tennessee Constitution.

Appellant filed suit in the Circuit Court for Rutherford County, Tennessee against Reid Edwin Cannon, seeking damages for injuries allegedly resulting from an accident involving automobiles driven by Cannon and by Stanley H. Kimmell. On the morning of May 11, 1970, appellant Kaiser was a passenger in an automobile being driven south on U. S. Highway 41 South by Stanley H. Kimmell. The automobile was leased from Perkins Leasing Company. Appellee Cannon was driving his automobile north on the same highway. At a point approximately seven miles south of the City of Murfreesboro, Cannon pulled into the southbound lane to pass an automobile pulling a trailer in front of him. When Cannon had pulled thirty or forty feet into the southbound lane, to a point even with the rear wheels of the trailer in the northbound lane, he observed the vehicle driven by Kimmell approaching in the southbound lane about 300 feet ahead. Unable to return to the northbound lane, Cannon applied his brakes and skidded toward the west side of the highway.

In an effort to avoid striking the Cannon automobile, Kimmell pulled his vehicle onto the shoulder of the road. The vehicle went into the ditch near the shoulder and proceeded 150 feet past the Cannon automobile, striking a tree in the front yard of a residence on the west side of the highway. Both Kimmell and Kaiser were injured.

Separate actions were filed against Cannon by Kaiser, Kimmell and Perkins Leasing Company. The cases were consolidated and tried before a jury. Kaiser offered evidence that as a result of the incident he had incurred special damages in the amount of $4,051.98 and a loss of earnings in the amount of $32,300.00. It was stipulated that Perkins Leasing Company had been injured in the sum of $100.00. Kimmell testified that he had been injured "very slightly", and offered proof of $106.29 in special damages and lost earnings from missing three days of work.

The jury returned a verdict for Kaiser in the amount of $2,500.00 and for Perkins Leasing Company in the amount of $100.00 but found against Kimmell.

Kaiser and Kimmell each moved for a new trial. The grounds for Kimmell's motion are not revealed in the record. Kaiser contended a new trial was appropriate in his cause for three reasons: that the verdict was contrary to the weight and preponderance of the evidence; that the verdict clearly demonstrated the jury did not follow the court's instructions with reference to the loss of earning capacity and that the verdict was contrary to the weight and preponderance of the evidence with reference to special damages, loss of earning capacity, and temporary disability; and that the verdict was so small as to indicate passion, prejudice, or unaccountable caprice.

The Trial Judge granted Kimmell's motion for a new trial. By Order of April 29, 1974 the court found that Kaiser's motion for a new trial was well taken "insofar as it attacks the inadequacy of the verdict." Pursuant to T.C.A. § 20–1330 the court suggested an additur of $6,500.00 and ordered a new trial unless the defendant accepted the increase. The Order provided that "if said suggestion be accepted the plaintiff[']s [m]otion for a new trial will be overruled in all respects and judgment will be rendered against the Defendant, Reid Edwin Cannon, for the total amount of $9,000.00 and the cost of this cause."

The Order further reflects that the defendant "did accept said additur in Open Court," that the court granted judgment against defendant for $9,000.00 plus costs, and that "the motion of the Plaintiff for a new trial in this cause is in all respects overruled." Plaintiff's prayer for an appeal was granted in the same Order.

On April 29, 1974 appellant filed a motion to set aside the order and to grant a new trial on three grounds: that the court did not consider the effect of the "tainted" verdict rendered in the Kimmell case on the verdict in this cause; that the court did not consider the effect of the "inconsistent" verdicts rendered in the Kaiser and Perkins Leasing Company cases on the verdict in this cause; and that the court's action in suggesting an additur in the amount of $6,500.00 was error because a "tainted" verdict cannot be corrected by additur. By Order of April 30, the Trial Court overruled the motion.

## I.

Appellant contends that the trial court's substitution of an additur in an amount unsatisfactory to plaintiff for the granting of a new trial, where the trial judge as the thirteenth juror finds that the jury verdict is inadequate, constitutes a denial of the right to trial by jury guaranteed by Article 1, § 6 of the Constitution of the State of Tennessee.

In *McCall v. Waer*, 487 S.W.2d 308 (Tenn. 1972), the Supreme Court expressly left open that issue. In *McCall* a defendant challenged the constitutionality of the additur statute, T.C.A. § 20–1330. The Court found that since the additur is conditioned on the defendant's acceptance he may refuse the additur with the result that a new trial will be ordered in which a jury will be available. Consequently, the Court held the statute constitutional as applied to defendants. It noted, however, that "should a plaintiff disagree with the amount of the additur, and demand a new trial . . . a serious question would be presented." 487 S.W.2d at 310–11.

Before turning to the Tennessee Constitution, an examination of the additur practice in other jurisdictions is in order. In many of the early cases in which additur was considered it was held unconstitutional, at least in instances in which the plaintiff did not consent. See, e. g., *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935); *Shanahan v. Boston & N. St. Ry. Co.*, 193 Mass. 412, 79 N.E. 751 (1907); *Lorf v. City of Detroit*, 145 Mich. 265, 108 N.W. 661 (1906); *Mohr v. Williams Case*, 95 Minn. 261, 104 N.W. 12 (1905); *Bradwell v. Pittsburg, etc. R. Co.*, 139 Pa. 404, 20 A. 1046 (1891), relied upon in *Raymond L. J. Riling, Inc. v. Schuck*, 346 Pa. 169, 29 A.2d 693 (1943). A number of more recent cases are in accord. See, e. g., *Dorsey v. Barba*, 38 Cal.2d 350, 240 P.2d 604 (1952); *Sarvis v. Folsom*, 114 So.2d 490 (Fla.App.1959); *In re Ohio Turnpike Comm'n*, 101 Ohio App. 474, 140 N.E.2d 328 (1955). The courts reasoned that additur was unknown at common law, and substituted a judicial decision on damages for that of a jury.

A number of jurisdictions have permitted additur only where damages are liquidated. See, e. g., *Yep Hong v. Williams*, 6 Ill.2d 456, 128 N.E.2d 655 (1955); *Rudnick v. Jacobs*, 39 Del. 169, 197 A. 381 (1938); *Kraas v. American Bakeries Co.*, 231 Ala. 278, 164 So. 565 (1935); *Fall v. Tucker*, 113 Kan. 713, 216 P. 283 (1923); *E. Tris Napier Co. v. Gloss*, 150 Ga. 561, 104 S.E. 230 (1920). In such cases there can be no argument that the province of the jury is invaded because no jury could properly have awarded more to the plaintiff than is provided for by the additur. Similarly, in cases of unliquidated damages, some courts have allowed the substitution of an additur for a new trial only where the trial judge suggests a recovery in the highest amount allowable as a matter of law. See *O'Connor v. Papertsian*, 309 N.Y. 465, 131 N.E.2d 883 (1956). Other courts have required that the suggested award of damages be set at the lowest amount that an unprejudiced jury could find for the plaintiff, who is given the

option of either accepting it or a new trial. See, e. g., *Risch v. Lawhead*, 211 Wis. 270, 248 N.W. 127 (1933). Still others have given plaintiff the option of stipulating to the lowest estimate of damages made by defendant's witnesses or accepting a new trial. See *Bingaman v. City of Seattle*, 139 Wash. 68, 245 P. 411 (1926).

Beginning in the late 1950's an apparent trend developed in the state courts in favor of the constitutionality of the additur practice as applied to plaintiffs in cases of unliquidated damages. See *Jehl v. So. Pac. Co.*, 66 Cal.2d 821, 59 Cal.Rptr. 276, 427 P.2d 988 (1967), overruling *Dorsey v. Barba*, supra; *Bodon v. Suhrmann*, 8 Utah 2d 42, 327 P.2d 826 (1958) (dictum); *Caudle v. Swanson*, 248 N.C. 249, 103 S.E.2d 357 (1958); *Fisch v. Manger*, 24 N.J. 66, 130 A.2d 815 (1957); *Genzel v. Halvorson*, 248 Minn. 527, 80 N.W.2d 854 (1957), overruling *Mohr v. Williams Case*, supra. The courts reasoned that the plaintiff could not be prejudiced since he was receiving more than the jury had given him, and emphasized the practical advantages of additur.

In Tennessee, the Article 1, § 6 guarantee "that the right to trial by jury shall remain inviolate" was incorporated into the Constitution of 1870 from the Constitution of 1796. It protects the right of trial by jury as it existed at common law. *Woods v. State*, 130 Tenn. 100, 169 S.W. 558 (1914); *State v. Sexton*, 121 Tenn. 35, 114 S.W. 494 (1908); *Marler v. Wear*, 117 Tenn. 244, 96 S.W. 447 (1906).

Whether additur violates the constitutional guarantee cannot be determined without inquiry into the historic powers of the jury. At common law at the time the right to trial was written into the first Tennessee Constitution a jury verdict in personal tort cases could not be disturbed, and a new trial granted, merely because the judge found the damages as assessed to be either excessive or inadequate.[1] Sedgwick on Damages, § 349 at 688–89 (9th ed. 1912).

---

1. For purposes of constitutional analysis, the uses of additur and remittitur are logically indistinguishable. At issue in both instances is the authority to disturb the jury's

In 1864 the English Court of Common Pleas unanimously rejected the proposition that a jury verdict could be overturned merely because of excessive damages. The Court could find only one earlier case in which a new trial had been granted solely on that ground. In reviewing that decision the Court observed,

> The principle on which [the new trial] was granted . . . was to give the defendant a chance of another jury: this is a very bad reason; for if it was not, it would be a reason for a third and fourth trial, and would be digging up the constitution by the roots; and therefore we are free to say this case is not law; and that there is not one single case (that is law) in all the books to be found, where the Court has granted a new trial for excessive damages in acts for torts.

*Beardmore v. Carrington,* 2 Wils.K.B. 244, 249, 95 Eng.Rep. 790, 793. The Court noted that an exception existed where the damages are "monstrous and enormous indeed, and such as all mankind must be ready to exclaim against, at first blush." *Id.*

Early American cases took a dim view of the granting of new trials because of dissatisfaction with the amount of the damages, regarding the practice as an invasion of the province of the jury. See, e. g., *George v. Law,* 1 Cal. 363 (1851); *Payne v. Pacific Mail S. S. Co.,* 1 Cal. 33 (1850). The earliest Tennessee cases on the subject were in accord with the common law view. In *Boyers v. Pratt,* 1 Humph. (20 Tenn.) 90, 93 (1839), it was said that a new trial should never be granted in a civil action for a personal tort on the ground of excessive damages unless the damages were so flagrantly outrageous as to evince passion, partiality or corruption. In *Goodall v. Thurman,* 1 Head (38 Tenn.) 209, 217–18 (1858), the Court observed:

> After all, we do not feel authorized to grant a new trial in this case upon the single ground of excessive damages, although we consider the amount entirely disproportionate to the case made out in the proof. The law on this subject is correctly laid down in 2 Greenl. sec. 255: "In trials at common law, the jury are the proper judges of damages; and where there is no certain measure of damages, the court, ordinarily, will not disturb their verdict, unless on grounds of prejudice, passion, or corruption in the jury." To this rule we have conformed our practice, and it is the only safe one on the subject.

verdict on grounds of dissatisfaction with the award of damages and the relative roles of the judge and jury. The inseparability of the two practices was recognized by the Tennessee Supreme Court in *McCall v. Wear,* supra, in which it noted that the problem involved in the instant case also inheres in the use of the remittitur. 487 S.W.2d at 311. Consequently, available cases dealing with remittitur will be examined as well as those dealing with additur.

In *Dimick v. Schiedt,* supra, the U. S. Supreme Court attempted to distinguish the two practices. It asserted that "[w]here the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess,—in that sense that it has been found by the jury—and that the remittitur has the effect of merely lopping off an excrescence. But where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict." The distinction is not persuasive, for the sum remaining after the remittitur is no more the verdict of the jury than the sum resulting from the additur. In reaching a verdict for a given amount a jury has presumably rejected all possible verdicts both below and above that amount. A close reading of *Dimick* reveals that the distinction was merely a practical one, resulting from the necessity of finding a basis that would allow the Court not to disturb the remittitur, which had been upheld in numerous cases the Court was loath to overrule, but at the same time would permit it to avoid extension of "doubtful precedent." 293 U.S. at 485–86, 55 S.Ct. 296. For the same reason, the distinction was employed by the California Supreme Court in *Dorsey v. Barba,* supra, although the court acknowledged that "there may be no real distinction between the powers to increase and decrease an award of damages . . . ." 240 P.2d at 609.

In *Tennessee Coal and Railroad Co. v. Roddy,* 1 Pickle (85 Tenn.) 400, 404–410, 5 S.W. 286 (1887), the Court reviewed the *Boyers* and *Goodall* cases as well as various standard texts and reaffirmed Tennessee's "harmony" with the common law rule, holding that in actions for damages for personal torts a trial judge could not set aside a jury verdict merely on the grounds of excessive damages, but that a new trial was appropriate where the damages evinced passion, prejudice, partiality, caprice, or corruption.

See also *Turner v. Turner,* 1 Pickle (85 Tenn.) 387, 390, 3 S.W. 121 (1887). The same year, in *Chesapeake, O. & S. W. R. Co. v. Higgins,* 1 Pickle (85 Tenn.) 620, 4 S.W. 47 (1887), the Court ruled that "it was error in the Circuit Judge to set aside the verdict of a jury and grant a new trial, in an action for damages for a personal tort, on the ground that the amount awarded was insufficient and inadequate, there being no evidence to show passion, prejudice, or partiality on the part of the jury." In *Jenkins v. Hankins,* 98 Tenn. 545, 549–50, 41 S.W. 1028, 1029 (1896), the Court again considered the issue of "inadequate" damages in such cases:

> We therefore proceed to the determination of the question as to correctness of the action of the Circuit Judge in setting aside the verdict of the jury, which was done manifestly because the Circuit Judge thought the amount given was too small. There can be no doubt that the Circuit Judge has the same power to set aside the verdict of the jury when the verdict is so inadequate as to indicate passion, prejudice, corruption, or unaccountable caprice, as he has to set aside similar verdicts so excessive as to indicate the same condition of mind on the part of the jury. *McCampbell v. Thornburgh,* 3 Head, 109; *Tennessee Coal, Iron & Railroad Co. v. Roddy,* 1 Pickle, 400, 5 S.W. 286.
>
> It is not within the exercise of the legitimate power of the Circuit Judge to set aside verdicts as trifling or excessive, unless they appear to be the result of passion, prejudice, corruption, or capricious action on the part of the jury. It will be observed that this particular verdict was set aside by the Circuit Judge because, in his opinion, it was "against the evidence," and it is insisted that in such case he has exhibited dissatisfaction with the verdict, and his dissatisfaction cannot be questioned if there were evidence pro and con considered by the jury, and by him in his action setting it aside. But the dissatisfaction of a Circuit Judge, which, appearing here, will invalidate a verdict, must be as to the finding upon an issue. If there was evidence pro and con, and an issue which was found in favor of one of the parties, and set aside at the instance of the other, the rule is applicable, but it has no application to the question of the amount. *Tennessee Coal, Iron & Railroad Co. v. Roddy,* 1 Pickle, 400, 5 S.W. 286; *Turner v. Turner,* 1 Pickle, 387, 3 S.W. 121.

In accord is *Burckell v. Memphis Street Ry. Co.,* 2 Tenn.Civ.App. 576, 583–84 (1912) (trial courts have the same power to set aside verdicts upon the ground of inadequacy as in cases of excessiveness).

Interestingly, there grew up a second line of cases, seemingly contrary to the first, permitting the granting of a new trial for excessive damages or the use of a remittitur as a substitute. The *Goodall* case, supra, argued in the December term at Nashville in 1858, was decided in an opinion written by Justice Caruthers. In the April term at Jackson in 1858 the Court had heard argument in the case of *Branch v. Bass.* In an opinion written by Justice McKinney, reported at 5 Sneed (37 Tenn.) 366, the Court held that a trial court has the discretion to set aside the verdict in an action for tort, where the court thinks the awarded damages to be excessive. Furthermore, it was held that the court as an alternative might suggest to the plaintiff that he release the damages in an amount which the court deems to be reasonable and just and, upon such release being made,

may render a judgment for the balance. The Court cited no cases supporting its position, asserting that the proposition that a court may set aside a verdict in an action of pure tort on the ground that the judge believed the damages to be excessive "cannot be questioned." *Branch* was followed in several subsequent cases, including *Young v. Cowden,* 98 Tenn. 577, 588, 40 S.W. 1088 (1897).

Thus existed two conflicting and independent lines of authority, neither taking note of the other.

As late as 1912 and 1913 the Court of Civil Appeals was following the former line of cases. In *Burckell v. Memphis Street Ry. Co.,* 2 Tenn.Civ.App. 576, 583–84 (1912), Justice Higgins, for the Court, wrote:

> . . . Circuit Judges are not authorized to set aside verdicts simply because they are dissatisfied with the amounts, when there is nothing to indicate passion, prejudice or caprice upon the part of the jurors. According to the view of the writer, this must always be, so long as we have jury trials as at common law, and so long as the respective functions of court and jury are preserved. In the absence of a measure of damages of reasonable certainty, it is the province of the jury to make the award. . . . While this salutary view has not always been observed, the fundamental principle is still alive, and it should be kept in mind by the trial Court and the reviewing Court.

In *Grant v. L. & N. R.R. Co.,* Court of Civil Appeals, Maury County (1913) (unpublished), Justice Wilson passionately dissented from the use of a remittitur as a substitute for a new trial on the ground of excessive damages because he found no evidence of passion, prejudice, or caprice and, relying upon the common law rule as enunciated in *Boyers, Goodall,* and *Roddy,* found that the jury verdict could not be disturbed. The other appellate judges upheld the trial judge's use of the remittitur because they found that the verdict evinced passion or prejudice. *Id.* at 14. Justice Wilson wrote:

It is gravely argued that, although the principle and rules announced in the *Roddy* case have never been overruled or modified by any decision of our Supreme Court, and in print published authoritatively, nevertheless, in practice it has been frequently disregarded. For myself, I want to say that until the Supreme Court sees proper to modify the rules thus announced and frequently announced in written opinions, I propose to follow them in this class of cases. * * The vital and fundamental question is: "Do judges in personal tort cases involving physical injuries and consequent mental and physical suffering, have the right and power to substitute their judgment for that of juries as to the amount of damages that should be awarded, unless the amount of their verdicts are so large as to show that they are the product of prejudice, partiality, caprice or corruption and are such as all reasonable men would pronounce unreasonable?"

If such is to become the rule of action in this class of cases in this state I trust as before stated that our able and learned Supreme Court will in a written and published opinion so announce, and then I will cheerfully follow its guidance, and that it will also announce, if such be the law, whether or not we can interpose our judgment in such cases for that of the trial judge or that of the jury or both. As before stated, I have no objection to the announcement of such a rule if it can be made under our constitution and laws fixing and governing the right of trial by jury. This is all I desire to say on the subject of the abatement of the verdict of the jury in the case as it stood in the Court below against defendant Thompson, except to say that if a trial judge is the thirteenth jury [sic] to pass upon the awardable damages in this class of cases overruling the constitutional twelve jurors selected by the litigants, let the Supreme Court say so, and if we are over the trial judges in the matter, let the Supreme Court say so. I have no objec-

tion. But until it does say so I prefer to stand by the rule announced by the fathers, as stated by Judge Lurton in the *Roddy* case.

On appeal, the Supreme Court acknowledged Justice Wilson's position. Citing *Branch* and subsequent cases relying upon it, the Court stated that "[t]he power to suggest remittiturs was long ago established in Tennessee, in cases of tort involving unliquidated damages, as well as in other cases. There is no intimation in our earlier decisions that this power can be exercised only when passion, prejudice, or caprice appears in the verdict of the jury . . . ." *Grant v. L. & N. R.R. Co.*, 129 Tenn. 398, 407, 165 S.W. 963, 965 (1914).[2] *Roddy* was distinguished on the ground that it did "not consider the question of remittitur at all, but deals with the duty of the court as to setting aside verdicts in toto." 129 Tenn. at 409, 165 S.W. at 965. The Court did not explain how in personal tort cases a remission of part of the plaintiff's jury award could be required as a condition for not granting defendant a *new trial* on the ground of excessive damages if *Roddy* held that a jury verdict could not be set aside and a new trial granted in such cases solely on that ground.[3]

Whatever the basis of the trial judge's power to disturb a verdict merely because of his dissatisfaction with the amount of damages in a case involving personal torts, the authority is recognized in many jurisdictions in this country, see 58 Am.Jur.2d "New Trial" § 148 et seq., and rests in this state on more than a century of precedent and practice. It is too late to revoke that authority, if we desired to do so, and we are bound by the rulings of the Supreme Court. It is clear, however, that a motion for a second trial based on inadequate damages is an appeal to the *conscience* of the trial court and is granted if at all "in spite of, rather than because of, the constitutional right of trial by jury." *Dorsey v. Barba*, 240 P.2d 604, 612 (1952) (Traynor, J., dissenting). A new trial not being mandated by Article 1, § 6 there can be no *constitutional* objection to its denial being made conditional on the defendant's agreement to the award of such additional sum as in the opinion of the trial judge is just and reasonable. Having had his day before a jury, plaintiff has had what the Constitution gives him, and more.

## II.

We turn to the question whether additur can be used to avoid a new trial in cases in which prejudice, passion, or caprice by the jury has affected the award of damages. In *Western Union Tel. Co. v. Frith*, 105 Tenn. 167, 58 S.W. 118 (1900), the Supreme Court held that a verdict so excessive as to indicate such a state of mind by the jury could be cured by a remittitur rather than a

---

**2.** In 1911 the General Assembly passed a statute permitting appellate review of a remittitur if the trial judge assigned as reason for suggesting it "passion, prejudice, partiality, corruption, or unaccountable caprice on the part of the jury." Tenn.Pub.Acts 1911, Ch. 29. The wording of the Act created some confusion, and lower court judges occasionally interpreted it as permitting a suggestion of remittitur only when such a state of mind was found on the part of the jury. See, e. g., *Third Nat. Bank v. Am. Eq. Ins. Co. of N. Y.*, 27 Tenn.App. 249, 264, 268, 178 S.W.2d 915 (1943). The effect of the Act, however, was not to define the circumstances under which remittitur could be used, but to delineate the circumstances under which that use could be reviewed. See *Waller v. Skelton*, 186 Tenn. 433, 211 S.W.2d 445 (1948); Hooker, "The Adequate Award; Tennessee Trends," 23 Tenn.L.Rev. 760, 763 (1955). The statute was amended in 1949 and now permits appellate review regardless of the ground suggested for the remittitur. T.C.A. § 27–118.

**3.** The Court's attempt to reconcile the cases has created a curious result. A trial judge is unable to grant a new trial because of the amount of damages awarded unless he finds passion, prejudice or caprice. He may grant a new trial because of the amount of damages awarded without a finding of passion, prejudice or caprice, however, provided only the opposing party refuses to adjust the verdict. The distinction is still adhered to in our cases. See, e. g., *Board of Mayor and Aldermen of Covington v. Moore*, 33 Tenn. App. 561, 569, 232 S.W.2d 410 (1950).

new trial.[4] In *Alabama Great Southern R. Co. v. Roberts*, 113 Tenn. 488, 82 S.W. 314 (1904), the Supreme Court abandoned its "usual practice" of remedying such verdicts by awarding a new trial, and held that, like the trial court, it could suggest a remittitur. In *Grant v. Railroad*, supra, the Court noted the observation by a text writer that *Frith* was against the weight of authority from other jurisdictions[5] and carried the doctrine of curing verdicts improperly influenced to a further extent than other courts had gone, but found the practice to be firmly established in the State. See also *Reeves v. Catignani*, 157 Tenn. 173, 175, 7 S.W.2d 38 (1928). The reason the Court concluded that passion, prejudice, or caprice in the award of damages should be curable by a remittitur was explained in the *Roberts* case. In response to the argument put forward by some courts that the prejudice might also have affected the entire verdict, so as to have influenced or caused the finding of liability where none existed, the Supreme Court answered that if such be the case the verdict can be set side on the ground there is no evidence to support it. 113 Tenn. at 498, 82 S.W. 314.

Regardless whether such reasoning is a sound rejoinder to the argument that remit-titur should not be allowed because the prejudice may have tainted the finding of liability,[6] it is no answer, of course, to any constitutional objection to the practice. The constitutional argument was not before the Supreme Court and was not considered by it.[7] Indeed, in none of the cases holding that verdicts so excessive as to demonstrate prejudice, passion, or caprice can be rehabilitated by remittitur has the Supreme Court squarely considered the constitutional question. Thus *Frith, Roberts* and *Grant* are no barrier to an unfettered consideration by this Court of the Article 1, § 6 issue involved in the analogous practice of additur.

■ After careful consideration of the question, we conclude that in cases in which a jury award is so low as to evince prejudice, passion, or caprice a denial of a new trial by the Circuit Judge on the ground that defendant has accepted a suggested additur violates plaintiff's right to trial by jury, in the absence of plaintiff's consent to the amount of the additur. Cf. *Blessing v. Angell*, 66 Mont. 482, 214 P. 71 (1923); *Rhyne v. Turley*, 37 Okla. 159, 131 P. 695 (1913); *Thomas v. Womack*, 13 Tex. 580 (1855). The right to trial by jury is the right to a fair trial by jury. Two values

---

4. If the verdict is influenced by "an element of actual corruption", however, the verdict should be set aside and a new trial ordered. *Reeves v. Catignani*, 157 Tenn. 173, 176, 7 S.W.2d 38 (1928). Even in cases in which remittitur may be suggested the process is a "delicate one . . . that a court should be slow to adopt". *Id.*

5. The general view today also seems to be that passion, prejudice, or caprice may not be cured by a remittitur. Annot., 65 A.L. R.2d 1331, 1347–48 § 6; 66 C.J.S. "New Trial" § 209(d) at 524; 3 W. Barron & A. Holtzoff, Fed.Prac. & Proc., § 1305.1 at 375 (1958).

6. It should be noted that the power to set aside a verdict not supported by evidence is not complete protection against effect of prejudice on the finding of liability. It is rare for a case to reach a jury if there is no evidence indicating liability. In cases of marginal or unclear liability a prejudiced jury may render a verdict that an unprejudiced jury would not have reached.

7. The final paragraph of the *Roberts* decision contains the statement that "[w]e are of the opinion, therefore, that it is good law, sound policy, and no invasion of the rights of parties or the province of the jury, and no exercise of original jurisdiction, to adopt the practice of requiring remittiturs in this court at the option of the appellee . . ." 113 Tenn. at 499, 82 S.W. at 316. It is clear, however, that the statement is a sentence summarizing the Court's conclusion on the several points considered in the opinion. The reference to there being "no invasion of the rights of parties or the province of the jury" is to the Court's holding that the use of remittitur in actions for unliquidated damages in tort in general is no invasion of the right to a jury trial, and not to the narrower issue whether prejudice, caprice, or corruption in such cases can be cured by remittitur. See 113 Tenn. at 495–96, 82 S.W. 314.

underlie that ancient right: that a party is entitled to an impartial fact-finding and that justice is more likely to be done when the verdict results from the collective conscience of his peers than when it is rendered by one person, whose judgment is unchecked and unaided. Imposition of an additur over plaintiff's objection merely substitutes an impartial, solitary decision by the judge for the biased, collective decision of the jury. Thus plaintiff is denied the *impartial* judgment of a *cross-section* of the community that he had originally demanded and to which he was constitutionally entitled.

■ In summary, if the verdict of the jury is the result of misconduct, such as passion, prejudice or caprice, then the aggrieved party has not had a jury trial as contemplated by the constitutional guaranty and such denial of a jury trial may not be constitutionally corrected by an additur or remittitur not accepted by both parties. If, however, there is no jury misconduct, such as passion, prejudice or caprice, then the aggrieved party has had a jury trial and his only remedy is to appeal to the trial judge, acting as a thirteenth juror, to grant a new trial or to suggest adjustment of the amount of the verdict. In such latter case, the aggrieved party is not deprived of a jury trial by an adjustment favoring him, because he has had a fair jury trial the results of which might properly have been approved by the trial judge if he had seen fit to do so.

### III.

■ After reviewing the evidence, we are unable to conclude that the jury was actuated by prejudice, passion or caprice. To set aside a jury verdict on such ground requires either direct proof thereof or circumstances permitting the inference that such improper influences were at work. If the conclusion is to rest solely on an inference drawn from the size of the award, the award must be outside the range of verdicts which a reasonable and impartial jury could have returned before it can properly be regarded as evidence of prejudice, passion, or caprice. In this case there is no direct evidence of any partiality, emotional influence, or irrational conduct on the part of the jury. Furthermore the amount of the award is not so unreasonable as to evince an improper state of mind on their part.

Dr. Badenhausen testified that as a result of the accident on May 11, 1970, plaintiff suffered a chipped fracture of the second lumbar vertebra and a back sprain, but that these back conditions were healed by the end of August, 1970, and should result in no further disability. The medical testimony was in agreement that Kaiser also suffered from Legg-Perthes disease of the left hip predating the accident. Although plaintiff testified he had never been troubled by his hip before the accident and Dr. Leatherman testified the accident aggravated the condition, Dr. Badenhausen testified the hip abnormality would have created medical problems for Kaiser even had he had no accident and that the injury caused no additional damage to his chronic hip problem. Mr. Kaiser never explained why he had x-rays taken in 1968 showing his abnormal hip condition if it had never troubled him. If the jury gave Dr. Badenhausen's testimony credence, it could have concluded that many of plaintiff's complaints at the time of the trial resulted from the hip condition and not from the accident and that several items of special damages were not sufficiently related to defendant's conduct to hold him accountable therefor. The following examples will suffice to show that a jury not actuated by prejudice, passion, or caprice could have substantially reduced plaintiff's claim for special damages.

1. *Yard Work ($1,065.00).* The expenses were not documented and were supported solely by plaintiff's testimony. The yard work was from the date of the accident in May of 1970 to the time of trial in December of 1973. Plaintiff's inability to do his

own yard work could have been attributed, at least after August of 1970, to the hip condition rather than the accident. In addition, the jury could have attributed the expenses partly to a philanthropic intent, since plaintiff testified that "the church I belong to supports a place called Brookhaven, which takes in young boys. And this was an opportunity for me to get some help for my yard and to help these young fellows, and to this day I still employ them."

2. *Replacement of golf clubs and cart ($525.78).* The trunk of the automobile in which Kaiser was a passenger contained his golf equipment. Plaintiff testified that he hadn't the "slightest idea" what happened to the equipment after the accident, although Kimmell told him it was damaged. The equipment was a year old and he replaced it with new equipment bought at a country club.

3. *Dr. William Schreiber ($50.50).* Although plaintiff testified the visit to Dr. Schreiber, an internist, was because of problems related to the accident, the examination was more than a year after the accident and the charge appears to be a periodic physical examination and associated tests.

4. *Norton Infirmary ($529.70).* The charge is for hospitalization in 1973 for the purpose of traction. Based on Dr. Badenhausen's testimony the jury could rationally have concluded the expense was not attributable to the accident.

5. *Yale Shoes ($97.00).* Dr. Badenhausen testified he treated plaintiff with built-up shoes for his hip condition.

6. *Dr. Leatherman ($334.00).* The jury could have concluded this medical expense was primarily for treatment of plaintiff's hip condition.

7. *Dr. Hughes Nichols ($23.00).* Dr. Nichols is plaintiff's dentist and the expense is for an examination of plaintiff while he was hospitalized at St. Anthony's. The dentist found a chipped molar, which plaintiff attributed to biting down too hard at the time of the impact.

8. *Jacket, trousers, shirt ($200.00).* This is the value plaintiff placed on his clothing which was damaged beyond use in the accident.

The jury could have concluded plaintiff did not incur significant loss of wages as a result of the accident. Plaintiff's claim of $32,300.00 in lost income was based on the number of days which he was unable to work because of hospitalization, doctors' visits, and pain, and was arrived at by determining an average daily wage, which was multiplied by the number of lost days. Mr. Kaiser at the time of trial was a corporate vice-president and general manager. There is no evidence any sums were deducted from his salary as a result of days missed from work. Furthermore, the jury could have concluded that not all the lost work was attributable to the accident. The evidence showed the following yearly income, including bonuses, in the years preceding and following the accident:

| 1969 | $27,840 (includes bonus for 1968) |
| 1970 | 28,534 (includes bonus for 1969) (year of accident) |
| 1971 | 30,302 (includes bonus of $5,302 for 1970) |
| 1972 | 38,414 (includes bonus of $11,518 for 1971) |
| 1973 | 42,650 (estimate, including bonus for 1972) |
| 1974 | 48,000 (estimate, including bonus for 1973) |

Although Mr. Kaiser contended he could have increased the size of his bonuses, which are based on the sales and profits of his division, had he been able to devote full time and attention to his work, the evidence was that his bonuses may not exceed 50% of

his base income. Evidently, Kaiser's base income was $25,000.00 in 1971, the year following the accident. His bonus for that year was $11,518.00, or only $732.00 below the maximum allowable. A jury could rationally have denied plaintiff any significant sum as lost wages.

Judging the credibility of witnesses and resolving conflicts in the evidence was for the jurors, and they apparently resolved such questions in defendant's favor, on the issue of damages. The actual award is within the range of verdicts which a reasonable and impartial jury might have returned, although it is near the bottom of the permissible limits, given these facts. Although the award of damages is smaller than we, as fact finders, might perhaps have made, the additur suggested by the trial court, and accepted by defendant, substantially increases plaintiff's compensation. There being no indication of prejudice, passion, or caprice by the jury, we find no abuse of discretion in the trial judge in granting an additur or in the amount thereof.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against appellants.

Affirmed.

SHRIVER, P. J., and TODD, J., concur.