## Telegraph Co. *v.* Frith.

### (*Jackson.* June 25, 1900.)

1. **Negligence.** *Evidence of, in delivery of telegram.*

   In an action against a telegraph company for negligence in delivery of a message, it is competent for plaintiff to show that he sent a second message to the company's operator urging prompt delivery of the first message. (*Post, p. 171.*)

2. **Telegraph Company.** *Degree and measure of liability for negligence.*

   Telegraph companies, like common carriers, are public servants, and held to a very high degree of diligence and a strict discharge of duty. For violation or negligent performance of duty they are liable not only for the pecuniary loss inflicted, but also for such further sum as will compensate for the mental anguish, grief, and disappointment suffered by the injured party, and, in proper cases, an additional amount may be allowed, in the discretion of the jury, as punitive damages. (*Post, pp. 171, 172, 176.*)

   Cases cited: Marr *v.* Telegraph Co., 85 Tenn., 529; Wadsworth *v.* Telegraph Co., 86 Tenn., 695; Telegraph Co. *v.* Mellon, 96 Tenn., 66; Jones *v.* Telegraph Co., 101 Tenn., 442; Railroad *v.* Griffin, 92 Tenn., 694; Telephone Co. *v.* Robinson, 97 Tenn., 638.

3. **Verdict.** *Remittitur allowable, when.*

   When the objection is not to the fact of a verdict, but to its excessiveness, it may be obviated by remittitur of the excess, even in cases of tort, and when the excessiveness has been the result of passion, prejudice, caprice, or corruption on the part of the jury. (*Post, pp. 172–174.*)

   Cases cited: Jenkins *v.* Hawkins, 98 Tenn., 551; Branch *v.* Bass, 5 Sneed, 366; Railroad *v.* Jones, 9 Heis., 27; Young *v.* Cowden, 98 Tenn., 589; Massadillo *v.* Railroad, 89 Tenn., 662.

4. **Same.** *Not excessive, when.*

   A verdict of $1,900, reduced by remittitur to $1,000, rendered against a telegraph company for its grossly negligent and inexcusable failure to deliver to the plaintiff a message inform-

ing him of the sudden death of his seven-year-old child, at a distant but accessible point, where his wife and child were visiting relatives, will not be disturbed for excessiveness where it appears that plaintiff could and would have been able to reach the point in time to be present at the burial of the child if the message had been promptly delivered, and that the company's agent received the message in due time, but deposited it in his pocket and carried it four days, forgetting that he had it, and failed to deliver it, though plaintiff lived only a few hundred yards away. These facts make a case for the allowance of punitive damages. (*Post,* , *pp. 174–176.*)

## FROM FAYETTE.

Appeal in error from Circuit Court of Fayette County. Thos. J. Flippin, J.

Jas. M. Greer for Telegraph Co.

H. C. Moorman for Frith.

Wilkes, J. This is an action for damages against the telegraph company for negligence in the delivery of the following telegram:

"Hazen, Arkansas, July 11, 1899. "*To R. A. Frith, Somerville, Tenn.*:

"Little Robert died this morning. Come at once; waiting here for you.

"(Signed)                    W. K. Bacon."

Plaintiff, Frith, lived in Somerville, Tennessee, with his wife and one child, Robert. His dwell-

ing was within the corporate limits of the town and about four hundred yards from the office of the telegraph company. His wife's father lived at Des Arc, Arkansas, and she, with her little child, Robert, about seven years old, had a few days prior to July 11, 1899, gone there to visit her father and relatives. The child became ill on the 5th of July and died on the morning of Tuesday, July 11. W. K. Bacon, the brother-in-law of the wife, went to Hazen, a station on the Little Rock & Memphis Road, about fifteen miles from Des Arc, it being the nearest telegraph office, and sent the telegram above set out, between 2 and 3 o'clock in the afternoon, paying the charge for transmission and delivery; about 8 o'clock in the evening returned to the office, and, upon ascertaining that the operator had heard nothing of the delivery of the message to plaintiff, sent another telegram to the operator at Somerville, requesting that the first one be delivered without delay, and paid also for this latter telegram.

Mr. Bacon remained at Hazen until after the arrival of the train from Memphis (the next day), upon which Mr. Frith was expected to come in response to the telegram, and when he did not come, and he did not hear from him, he returned to Des Arc, and, Mr. Frith not coming and not having been heard from, the child was buried. It is shown that the operator at Somerville received the message at 4:40 on the

afternoon of July 11, 1899, and Frith was then in Somerville, and the operator knew him and where he resided, and had delivered telegrams to him at his residence on other occasions. Frith remained at his residence that night, and the next day was at work in Somerville near the public square until 4:45 in the afternoon, when he went out to work at Jackson's, some eight miles in the country, and remained until the afternoon of Saturday, the 15th, when he returned, and through the mail received a letter from his wife, informing him of the death of his child, Robert. Soon thereafter a friend told him there was a message for him at the telegraph office. He telephoned to that office and inquired if there was a telegram there, and the operator answered there was, and to come and get it and he would explain why it had not been delivered earlier. About 6 o'clock in the evening the operator found the plaintiff at a store up-town, and explained to him that he had put the telegram in his pocket after receiving it, intending to deliver it when he came up-town, as he usually did in the evening. When he came up-town he forgot all about the telegram, and did not think of it again until Frith telephoned to him about it, four days thereafter. It appears that the operator lived some 325 yards from the residence of the plaintiff. Frith, after receipt of the letter and telegram on Saturday, went to Des Arc. If

the telegram had been delivered promptly, as it should have been, he would have been able to reach Des Arc before the burial of his child, by either of two roads from Memphis, and would have gone.

There was a trial before the Court and a jury, and a verdict for $1,900, the amount sued for. Upon suggestion of the trial Judge, there was a remittitur of $900 and judgment for $1,000 and costs. Defendant, telegraph company, has appealed and assigned errors.

It is said it was error to admit evidence of the sending of the second telegram, as that was a separate and distinct matter. We think it was not error, but was pertinent to show the urgency of the sender of the message, and the negligence of the company in not delivering the original telegram, and this is true whether, as a matter of fact, the second message was or was not sent. The wording of the message carried with it notice of its importance and the necessity for immediate delivery. This was made still more prominent and important by the effort to trace it and procure its delivery. The sending of the second message bore directly upon the question of the defendant's discharge of duty and accentuated its negligence in that regard.

Telegraph companies, like common carriers, are public servants and held to a very high degree of diligence and a strict discharge of duty. *Marr*

*v. Telegraph Co.,* 85 Tenn., 529; *Wadsworth* v. *Telegraph Co.,* 86 Tenn., 695; *Telegraph Co.* v. *Mellon,* 96 Tenn., 66; *Jones* v. *Telegraph Co.,* 101 Tenn., 442.

Having violated its duty and been negligent in its discharge, the company is liable in damages. These damages must be such as to reasonably compensate the party injured not only for his pecuniary loss, but also for the mental anguish, grief, and disappointment caused by the negligence. *Railroad* v. *Griffin,* 92 Tenn., 694; *W. U. Tel. Co.* v. *Robinson,* 97 Tenn., 638; *Jones* v. *Telegraph Co.,* 101 Tenn., 442.

It is said that, conceding this doctrine to be now established by the decisions of this Court, still the verdict in this case was so excessive as to indicate passion, prejudice, corruption, or caprice on the part of the jury, and it should, therefore, have been set aside and treated as void and a new trial awarded, and that it is an error such as is not, and cannot be, cured by a remittitur. The insistence is that when the verdict is based upon passion, prejudice, corruption or caprice, the proper remedy is not to remit, but to set aside the verdict altogether and award a new trial.

An ingenious and forcible argument is made, and it is not without authority, that in actions for personal injuries, when there is no fixed standard for the measure of damages, every verdict

Telegraph Co. *v.* Frith.

which is by the trial Court considered as excessive must be so deemed on account of passion, prejudice, corruption or caprice on the part of the jury, and that when a trial Court refuses to approve such verdict it can only be upon such ground. Even if this be conceded to be true, and if it be admitted that in the present case the trial Judge refused to approve the verdict because he deemed it to be so excessive as to indicate passion, prejudice, corruption or caprice, still the question remains, Should the verdict be set aside or a less amount approved and judgment rendered therefor upon a remittitur. Although a verdict may be the result of passion, prejudice, caprice or corruption, it is nevertheless a valid verdict until and unless it is set aside. If it is reduced by the trial Judge to such an amount as makes it a proper verdict on the facts of the case, and this is assented to by the plaintiff, it is purged of its taint, and judgment may be rendered for such reasonable amount without the necessity of another trial. This has been the practice and rule of this Court and the Court below for a long number of years, and we can see no reason why it should not apply in cases of tort as well as in cases of contract. It is true a plaintiff cannot be forced to remit, and if he protest and object the trial Court should not render judgment, but should grant a new trial. The trial Judge can only suggest, and if the plaintiff

accept without protest or objection, then judgment may be rendered by the Court. *Massadillo* v. *The Ry. Co.,* 5 Pickle, 662.

There is a broad distinction between cases where the dissatisfaction is with the amount of the verdict and those where the dissatisfaction is with the fact that any judgment has been rendered. In the latter case, when the evidence does not, in the opinion of the Court, warrant any verdict, it should be set aside and no judgment rendered, but when the facts, in the opinion of the trial Court and of this Court clearly warrant some recovery, there is no reason why a judgment for a reasonable and proper amount should not be rendered upon the assent of the plaintiff to remit to such amount. *Jenkins* v. *Hankins,* 14 Pickle, 551. The rule of remittitur applies to actions for torts as well as to actions on contracts. *Branch* v. *Bass,* 5 Sneed, 366; *Railroad Co.* v. *Jones,* 9 Heis., 27; *Young* v. *Cowden,* 14 Pickle, 589.

The question then presents itself, Is the judgment for $1,000, as rendered by the Court, warranted by the evidence? The record presents a case of the grossest negligence. The telegram bore upon its face notice of its importance and urgency. There was absolutely no effort to deliver it. That it should have been placed in the operator's pocket and forgotten for four days is utterly inexcusable. There are in all such cases several

considerations which enter into the estimate of damages. They cannot be said to rest upon pecuniary considerations, for ᐧ no ᐧ money beyond the mere cost of the telegram is involved. But in this case we have the grief, disappointment, and mental anguish of a father for his only child, whose burial he was prevented from attending and superintending. In addition, we must look to the fact that he realized that the mother was left alone in her distress, and that he was deprived of the privilege of being with her and so far as he could mitigating her grief by ministering to her in the hour of bereavement, and this was a source of grief and disappointment to him. All of these considerations, added to the distress of the father and husband, are proper to be looked to not from the standpoint of sympathy for the unfortunate, but in estimating the grief and disappointment of the father over the situation in which he was placed by the failure to deliver the telegram. In addition, upon grounds of public policy, this servant of the public, which undertakes to perform offices of this character promptly, should be visited with punitive damages if it performs its duty in a manner so negligent and reckless of the rights of others as is shown in this case.

The company is properly punishable for its neglect of statutory and common law duty, and its liability is not measured by the compensation it

has received, but on the one hand by its dereliction of duty and on the other by the grief, disappointment and injury to the feelings caused by the default of the company. Shannon, §§ 1837, 1838; *Wadsworth* v. *Tel. Co.,* 86 Tenn., 695; *Railroad* v. *Griffin,* 92 Tenn., 694; *Telegraph Co.* v. *Mellon,* 96 Tenn., 69.

We are of opinion there is no error in the record, and in view of the facts in this case the judgment is not excessive, and it is affirmed, with costs.