SYLVANE FREED v. MRS. HELEN ROSE FREED.

Western Section.    April 1, 1929.

Petition for Certiorari denied by Supreme Court, May 25, 1929.

692

Charles L. Neely and W. M. Hall, of Memphis, Elder & Elkins, W. R. Kinton and W. W. Herron, of Trenton, for plaintiff in error. Taylor, Adams & Freeman, of Trenton, for defendant in error.

SENTER, J. This is an action for damages for personal injuries growing .out of an automobile accident, in which plaintiff was riding as the guest of defendant in defendant's automobile, en route from Trenton to Memphis.

The parties will be referred to as in the court below, Mrs. Helen Rose Freed, as plaintiff, and Sylvane Freed, as defendant.

The declaration is in four counts. The first count avers in substance that the defendant was driving the automobile at a rate of speed in excess of thirty miles per hour, and in violation of the speed law as fixed by the statute in force in Tennessee, and was operating the automobile at a reckless, unlawful, illegal and dangerous rate of speed, and was operating said automobile in a careless and negligent way and manner. Each of the counts of the declaration sets out in detail the nature and extent of the injuries sustained by plaintiff. The other three counts of the declaration are common law counts charging common law negligence of the plaintiff in operating the automobile at the time the accident occurred, resulting in the injuries sustained by plaintiff, and sets out in detail the specific acts of negligence complained of.

The defendant filed two pleas to the declaration. First, the general issue of not guilty to each of the counts of the declaration, and second, the contributory negligence of the plaintiff.

The trial of the case resulted in a jury verdict in favor of plaintiff and against the defendant for the sum of $23,000. A motion for a new trial was made by the defendant, assigning several grounds, one ground being that the verdict of the jury was so excessive as to show passion, prejudice or caprice. This ground of the motion was sustained by the court unless the plaintiff would accept a remittitur

of $11,000, reducing the verdict from $23,000 to $12,000. The remittitur was accepted by plaintiff under protest. Whereupon, the learned trial judge overruled the motion for a new trial, and rendered judgment in favor of plaintiff and against the defendant for the sum of $12.000. From this judgment the defendant prayed an appeal to this court in the nature of a writ of error, and has perfected the appeal and has assigned numerous errors.

The appellant, in the brief filed, states that the several assignments of error, really present but four questions to be determined by this court, and which are as follows:

"1. That there is no proof to sustain the verdict of the jury and the judgment of the court.

"2. The competency of the testimony permitted by the court concerning the inability of the plaintiff to bear children and the fact that that character of testimony tended to prejudice the jury against the defendant and was highly prejudicial to his case.

"3. The correctness of the charge of the court.

"4. The excessiveness of the verdict."

The above four propositions are covered by the assignments of error. Under the first proposition it is contended that there was no proof to sustain so large a verdict and judgment as was rendered. Hence. this question will be considered in connection with the fourth proposition which goes to the amount of the judgment.

Complaint is made of certain evidence under the second proposition, wherein the court permitted the plaintiff to prove that as one of the results of her injuries it would be unsafe for her to bear children. Under this assignment of error it is contended that this evidence was not relevant to any issue presented in the declaration, and that there was no averment in the declaration that this condition was one of the results of the injuries sustained.

We do not think this contention of appellant can be sustained. The declaration sets out in great detail the nature and extent of the injuries received by plaintiff in the automobile accident.

In the first count of the declaration the alleged injuries sustained, and the averments on that subject is thus stated: "Whereby she was rendered unconscious, greatly wounded, bruised and maimed in limb and body. *internally* and *externally*, and *permanently*, and she was cut and lacerated on and about the face and body, her jaw-bone broken; her left hip dislocated, mashed, split, torn and fractured and she was otherwise greatly injured in and on her body, and suffered much physical and mental pain for a long period of time. . . ."

In the second count of the declaration her injuries are described as follows: "She was cut and lacerated on and about the body and face, her jaw bone broken, her hip dislocated, fractured, crushed and

bruised and she was *otherwise greatly* and *permanently* injured and suffered much mental and physical pain and for a long period of time, and still suffers from her said injuries. She was confined in hospitals in Memphis, Tennessee, for a long period of time, where she suffered much physical and mental pain and suffered much pain and agony from operations and treatments in order to be cured. . . ."

In the third count of the declaration it is averred: "Whereby she was rendered unconscious, greatly wounded, bruised, maimed and crippled in limb and body, *internally, externally* and *permanently*. She was cut and lacerated on and about the body and face; her jaw bone broken, her hip dislocated, fractured, crushed and bruised, and she was otherwise greatly and *permanently* injured, and suffered much mental and physical pain for a long period of time and still suffers from her said injuries. She was confined in hospitals in Memphis, Tennessee, a long period of time where she suffered much physical and mental pain and suffered much pain and agony from operations and treatments in an effort to be cured. . . ."

The averments in the fourth count of the declaration are substantially the same as above quoted on the subject of the nature and extent of plaintiff's injuries. In describing the nature and character of certain of the injuries sustained, Dr. Freed, a specialist on the subject, whose deposition was taken by plaintiff, and who practices his profession in the city of New York, was called to Memphis for the purpose of consulting with the other physicians and surgeons attending plaintiff and treating her while she was confined in the hospital, and was asked and answered as follows:

"Int. 14. If you have answered that her pelvic girdle was injured, please state what effect the injury, if any, would have on her reproduction in the future?

"A. Due to the fracture of the acetabulum into the pelvis, childbirth will be most serious and dangerous and would probably be terminated by Caesarean Section; or the pregnancy would be so painful as to end prematurely."

Cross interrogatory No. 10 propounded by the attorney for defendant, is as follows:

"Cross Int. 10: If you answered to Interrogatory No. 14 that her pelvic girdle was injured, please state in plain English so that a person not acquainted with anatomy or surgery can understand it, just what the pelvic girdle is, and what relation it bears to the female organs of reproduction, and would it necessarily have any effect on her power to procreate, and if so, what?

"A: The pelvic girdle is the basin that supports the female reproductive organs, and affords a passage-way through which a baby must pass if birth is to be normal. A fracture of the pelvis would diminish

its size and this would probably make natural birth impossible; also it might produce such irritation and pain as to cause a miscarriage."

We do not find any citations in appellant's brief to any exceptions taken to the above and foregoing evidence. Nor do we find any exceptions set out in the record. However, the major portion of the evidence complained of was brought out on cross examination. We are also of the opinion that this evidence was clearly competent in support of the averments of the declaration to the effect that plaintiff's injuries are permanent. It results that this assignment of error is overruled.

By the third assignment of error, which is one of the assignments directed toward the charge of the court, it is contended that the court erred in charging the jury that it is negligence per se to operate an automobile on one of the public highways at a rate of speed in excess of thirty miles per hour. In support of this assignment it is urged that the error consists in the failure of the court to further instruct the jury that unless the excessive rate of speed was the proximate cause of the injury it would not be negligence so as to render the defendant liable.

By the fourth assignment it is said that the court erred in charging the jury as follows: "If you find for the plaintiff you will so report and assess the damages at such an amount as you find from the evidence she is entitled to under the rule for the measurement of damages to be hereinafter given you. Plaintiff's measure of damages subject to the above rules of mitigation and diminution, is fair and reasonable compensation for the injuries sustained, mental and physical pain suffered, and if you find her injuries are permanent, for the physical incapacity occasioned thereby."

The court had previously charged with reference to the law of contributory negligence, both remote and proximate, and this charge on the measure of damages, specifically states: "Plaintiff's measure of damages subject to the above rules of mitigation and diminution," and we think is a proper statement of the law covering compensatory damages for personal injuries sustained. The charge of the court on the subject of operating an automobile in excess of the legal rate of thirty miles per hour, constituting negligence per se, was followed by the general charge with a correct statement of the law on the subject. Referring further to the assignment based on the measure of damages, in the brief of appellant, is the following frank statement: "Another ground alleged is that in regard to the assessment of damages, although after thinking over the matter again we hardly believe that there is much for us to complain about as we failed to ask for a special request on this ground, which is shown as ground four under the assignments of error." These assignments of error are accordingly overruled.

The sixth assignment is another challenge to the charge of the court, and complains of the action of the court in refusing to grant one of the three special requests tendered by defendant. This special request which was refused by the trial judge, is on the subject of the proper definition of "ordinary care and prudence," and a definition of "proximate cause." The defendant tendered three special requests, two of which were given in charge by the court, and the special request refused was fully covered by the general charge. We have carefully examined the charge of the court, and we are of the opinion that it contains a sufficiently full instruction to the jury on all questions made by the pleadings and proof. By one of the assignments of error appellant states that the charge, covering a little over three pages of typewritten matter, is too brief, and does not deal with the questions at sufficient length. We do not think the charge is subject to this criticism.

It results that all assignments of error directed to the charge of the court to the jury are overruled. This brings us to the assignment based upon the alleged excessiveness of the judgment. Appellant has devoted the major portion of the excellent brief to this question, and has cited numerous cases involving the amounts of judgments held to be excessive. Under this assignment of error it is urged by appellant that the very fact that the jury returned a verdict for the sum of $23,000, and which judgment was reduced by the trial judge to $12,000, of itself, shows that the jury in reaching its verdict, were controlled by passion, prejudice or caprice such as to entitle the defendant to a new trial. It being further urged by appellant that the action of the trial judge in ordering a remittitur shows that the trial judge considered that the verdict was so excessive as to indicate passion, prejudice or caprice on the part of the jury trying the case.

Whatever the rule may be in other states on this subject, it is too well settled in this state by numerous decisions, that the trial judge, in the exercise of his judicial discretion, may order a remittitur, or rather, may overrule a motion for a new trial unless the plaintiff accepts a suggested remittitur by the court. In Grant v. Railroad, 129 Tenn., on pages 406 and 407, it is said:

"We cannot agree that the trial judge is without power to suggest a remittitur, unless there is an appearance of passion, prejudice, or caprice in the verdict of the jury. The power to suggest remittiturs was long ago established in Tennessee in cases of tort involving unliquidated damages, as well as in other cases. There is no intimation in our earlier decisions that this power can be exercised only when passion, prejudice or caprice appears in the verdict of the jury, nor is the right to suggest a remittitur re-

stricted to such cases in other jurisdictions." (Citing a long list of cases from this state, and also cases from other jurisdictions.)

In Telegraph Co. v. Frith, 105 Tenn., 167, 58 S. W., 118, it was first held by the Supreme Court of Tennessee, that a verdict so excessive as to show passion, prejudice, caprice, or corruption might be cured by a remittitur. It seems that prior to Telegraph Co. v. Frith, such verdicts were set aside. (Moore v. Birchfield, 1 Heisk., 203; Nashville & Chattanooga R. Co. v. Smith, 6 Heisk., 174; R. R. v. Roddy, 85 Tenn., 405; R. R. v. Stacker, 86 Tenn., 343; R. R. v. Griffin, 92 Tenn., 694.)

While it may be admitted that the rule prevailing in most jurisdictions is that verdicts so excessive as to indicate they were the result of prejudice, passion or caprice should be set aside, yet in Grant v. R. R., supra, the court, commenting on the rule, after conceding the prevailing rule in most other jurisdictions as above stated, proceeds with this statement: "The practice now, however, is firmly established in Tennessee, and although a verdict is so excessive as to indicate that it was influenced by passion, prejudice or caprice, it may be cured, and will stand, if a remittitur is accepted by the plaintiffs, and the verdict reduced to a reasonable amount."

It is also the settled law in Tennessee, that remittiturs in the Appellate Courts may be made to cure an excessive verdict in the same manner as the trial courts may do. (R. R. v. Roberts, 113 Tenn., 488, 82 S. W. 314, 67 L. R. A. 495, 3 Ann. Cas. 937.)

In Grant v. R. R., supra, the whole question of the practice of suggesting remittiturs both in trial courts and appellate courts to cure an excessive verdict is discussed and the practice approved, even where it is found that the verdict was due to passion and prejudice, and cases cited. In that case, on this subject, it is further said:

"The law, therefore, has long been settled in Tennessee, that a remittitur might be suggested by the court in cases where the verdict was merely excessive. That a verdict due to passion and prejudice may also be saved by remittitur is the later doctrine."

In the instant case the record discloses unusually serious, painful and permanent injuries sustained by the plaintiff. Some of the injuries which she sustained will be summarized as follows: By the force of the impact plaintiff was rendered unconscious, and remained unconscious from the time of the injury on Thursday until the following Sunday. Her jaw bone was broken; certain facial nerves were severed; her face, chin and neck badly lacerated; her mouth was cut on the inside, necessitating stitches being taken on the inside as well as the outside of her mouth; her right buttock was bruised and wounded to such an extent that it left a large, tender scar that necessitates her sitting at all times, on one side, because of the tenderness and soreness resulting from the wound at that location, and this injury is in

the nature of a permanent injury. Her pelvic bone was broken, shattered, and the femur bone driven through it and into the pelvis. Her knee was badly injured so that she has not regained the full use of it and will not fully recover from the stiffness resulting. Her leg is shortened and she will never regain complete power of locomotion. The treatment necessary was excrutiatingly painful and because of the position of the body, anaesthetics could not safely be administered because of the resultant nausea, and the danger of the patient's strangling with her chin and mouth wired, and the position in which the body had to lie during treatment. In fact, the record discloses that her injuries were so painful and her suffering so great that her entire nervous system has become disordered and deranged. She spent months in the hospital, and her suffering during all that time was intense.

We are of the opinion that a verdict for $23,000 was excessive. Appellee accepted the remittitur under protest and by proper assignment of error asked this court to restore the judgment to the amount of the verdict renderd by the jury, assigning as error the action of the court in suggesting and ordering a remittitur. This assignment by appellee will be overruled.

We are of the opinion that the remittitur suggested by the learned trial judge was proper. We are further of the opinion that the nature and extent of the injuries sustained by plaintiff, her intense suffering and mental and physical anguish, resulting from her injuries, entitles her to a judgment under the law of compensatory damages, considering the permanency of the injuries sustained, to the amount for which the judgment was rendered. Appellant contends that this judgment is grossly excessive, and if the case is not reversed and remanded for a new trial that a still further reduction should be made by this court by way of remittitur. To this contention we cannot agree. We are of the opinion that the plaintiff is entitled to recover the full amount as fixed in the judgment of the lower court, $12,000.

It results that all assignments of error are overruled, and the judgment of the trial court is affirmed. Judgment will be entered here in favor of plaintiff below, Mrs. Helen Rose Freed, for the sum of $12,-000, with interest thereon since the date of the rendition of the judgment in the lower court, and the costs of the cause, including the cost of this appeal.

Owen and Heiskell, JJ., concur.