**Wendell PITTS, Petitioner,**

v.

**EXXON CORPORATION, d/b/a Exxon Company, U.S.A., Respondent.**

Supreme Court of Tennessee
at Knoxville.

March 31, 1980.

Perry P. Paine, Jr., Maryville, for petitioner.

Kenneth W. Kromer, Jr., McCampbell, Young, Bartlett Hollow & Marquis, Knoxville, for respondent.

## OPINION

FONES, Justice.

The issue before this Court is whether a jury verdict, approved by the trial court, but found by the Court of Appeals to be the result of passion, prejudice or caprice, based solely on the excessiveness of the award, can be cured by remittitur.

Plaintiff's negligence action against Exxon Corporation resulted in a jury verdict of $140,000. Defendant's motion for a new trial was overruled and judgment entered for the amount awarded by the jury. The Court of Appeals found that the jury verdict was "patently excessive . . . considerably in excess of what a fair and impartial jury would have awarded the plaintiff" and concluded that the jury arrived at its verdict out of passion, prejudice or an unaccountable caprice. Relying upon *Kaiser v. Cannon*, 529 S.W.2d 235 (Tenn.App. 1975), the Court of Appeals held that a jury verdict that is the result of misconduct, such as passion, prejudice or caprice, is the denial of a jury trial that cannot be constitutionally corrected by remittitur, if not accepted by both parties.

### I.

Plaintiff was employed by Don Reynolds, doing business as Broadway Exxon Service Station in Maryville, Tennessee, as a service station attendant. When the Exxon tanker truck delivered gas to the station, during his night shift, it was his duty to climb up on the tanker and check each compartment to determine that it was at the proper level both before and after transfer of the gas from the truck to the station storage tanks. On the date of the accident another employee had checked the truck before the transfer, but when the transfer was completed, plaintiff was asked by the Exxon driver to check the truck's compartments. Plaintiff ascended the ladder, walked the cat-walk on top of the tanker and checked the four compartments. While descending the ladder, backwards, his foot slipped from one of the steps, and in falling the wedding band on his right ring finger caught in a groove in a metal step and the entire weight of his body was suspended in mid-air supported solely by that finger.

It was plaintiff's contention that defendant's tanker was an old model with a narrow ladder and steps with pointed grooves

providing no traction; that the cat-walk and top of the tanker truck was coated with a greasy, grimy, oily substance that permeated his shoe soles and caused him to slip and fall. As noted by the Court of Appeals, liability was sharply contested.

Plaintiff was hospitalized for nineteen days. After the original suturing of his hand, the blood supply was restricted and it was necessary to resuture it. Later a skin graft was performed. The treating physician testified that plaintiff had a permanent partial disability of thirty percent of the right hand. An orthopaedic surgeon, specializing in hand surgery, testified for defendant and rated plaintiff's permanent disability as a sixteen percent loss of use of the right hand. Plaintiff's disability period was sixty-six days after which he returned to work for the same employer. At the time of trial, approximately two years after his return to work, he had been performing essentially the same duties as before, to the satisfaction of his employer, and his salary as a service station attendant appears to have been unaffected by the injury as he received several increases after his return to work. Plaintiff testified that he earned extra money painting and working on antique automobiles but that the disability to his right hand would permanently prevent him from engaging in those activities. He estimated that he had earned approximately two hundred dollars per month painting and working on antique automobiles but presented no records or other evidence in support of that claim. Plaintiff's medical expenses were $2,702 and his loss of earnings during the sixty-six days of disability were approximately $2,000. Plaintiff was 38 years old.

There was evidence that the injury was very painful, that the pain persists daily and is greatly intensified in the wintertime, when plaintiff must frequently work with a heavy mitten on his right hand and keep a hand-warmer in the mitten; that there are many things, other than painting and working on automobiles, that plaintiff can no longer do because he cannot grip tools, etc.

## II.

Prior to the turn of the century, the reported cases in this State were not entirely consistent in dealing with the authority of trial judges to cure excessive jury verdicts, whether characterized as so excessive as to evince passion, prejudice or caprice, or merely excessive.

In *Telegraph Co. v. Frith*, 105 Tenn. 167, 58 S.W. 118 (1900), after a jury verdict of $1,900 the trial judge suggested a remittitur of $900. Plaintiff accepted the remittitur and the judgment for $1,000 was entered against defendant. Defendant appealed insisting that the verdict was so excessive as to indicate passion, prejudice or caprice on the part of the jury, that such a verdict could not be cured by remittitur, the only remedy being a new trial. The Supreme Court responded to that contention, as follows:

"Although a verdict may be the result of passion, prejudice, caprice or corruption, it is nevertheless a valid verdict until and unless it is set aside. If it is reduced by the trial Judge to such an amount as makes it a proper verdict on the facts of the case, and this is assented to by the plaintiff, it is purged of its taint, and judgment may be rendered for such reasonable amount without the necessity of another trial. This has been the practice and rule of this Court and the Court below for a long number of years, and we can see no reason why it should not apply in cases of tort as well as in cases of contract. It is true a plaintiff cannot be forced to remit, and if he protest and object the trial Court should not render judgment, but should grant a new trial. The trial Judge can only suggest, and if the plaintiff accept without protest or objection, then judgment may be rendered by the Court. *Massadillo v. The Ry. Co.*, 5 Pickle, 662 [, 89 Tenn. 661, 15 S.W. 445]." 105 Tenn. at 173–74, 58 S.W. at 119.

In *Alabama Great So. R. R. Co. v. Roberts*, 113 Tenn. 488, 82 S.W. 314 (1904), jury verdicts were rendered for personal injuries sustained by Faustina Roberts in the sum of

$2,000 and Edista Roberts in the sum of $800. On defendant's appeal, liability was conceded, and the only issue was the contention that the compensatory damages awarded by the jury and approved by the trial judge were so excessive as to evince passion, prejudice or caprice on the part of the jury. The Supreme Court agreed with defendant and reduced Faustina's damages to $1,250 and Edista's to $400, with the proviso that either plaintiff could reject the reduced damages and have a new trial. The Court acknowledged that its curing of a verdict so excessive as to evince passion, prejudice or caprice was "a new practice" and proceeded to "state the reasons for adopting it and the law applicable to it." *Id.* at 492, 82 S.W. at 314. In the course of reviewing the state of the law the Court observed that, "the usual practice" in damage suits for personal injuries had been to set aside a jury verdict that was tainted by passion, prejudice or caprice and award a new trial, but that

> "the consequence has been to prolong litigation, to swell bills of cost, to delay final adjudication, and, in a large number of instances, to have such excessive judgments repeated over and over, upon the new trial."[1] *Id.* at 493, 82 S.W. at 315.

Later in the opinion the *Roberts* Court expressly rejected those cases holding that when damages are so excessive as to evince passion, prejudice or caprice that the "entire verdict" is tainted and must be set aside and justified that holding with this rationale:

> "The doctrine of remittitur applies to damages in torts as well as to damages for breach of contract. The judge may set aside the verdict in such cases *in toto.* It follows that he may determine what would be a reasonable amount. Such is not a usurpation by the court of the province of the jury. The facts have been

passed on by a jury, and the right to recover has been determined by the jury, and not by the court. The judge expresses his opinion as to the reasonableness of the amount, the plaintiff accedes to the justice of the judge's estimate, and agrees to accept it; and, while the judgment is for an amount smaller than that found by the jury, it is a judgment based upon facts which the jury have found fixes liability, and not upon facts found by the court. *Branch v. Bass,* 5 Sneed, 369; *Young v. Cowden,* 98 Tenn. 589, 40 S.W. 1088; *Arkansas Valley Land Co. v. Mann,* 130 U.S. 69, 9 S.Ct. 458, 32 L.Ed. 854; 18 Enc. Plead, and Prac., 127; *Burdict v. Mo. Pac. Ry. Co.,* 123 Mo. 221, 27 S.W. 453, 26 L.R.A. 384, 45 Am.St.Rep. 528." *Id.* at 496–97, 82 S.W. at 316.

In short, *Roberts* held that trial courts had the authority to use remittiturs to cure excessive jury verdicts (1) where the verdict was merely excessive or (2) where it was so excessive that it evinced passion, prejudice or caprice, and it also affirmed the trial judge's option to simply order a new trial without suggesting a remittitur, if he found the verdict so excessive as to evince passion, prejudice or caprice. Finally the *Roberts* court held that, in substance, what the trial court could do with respect to remittiturs, the Supreme Court could do. Parenthetically, the Court observed that it could not cure an inadequate judgment by giving a "judgment for an amount in excess of what the jury has found, . . . for that would be the exercise of original jurisdiction." *Id.* at 497, 82 S.W. at 316. Further rationale for its action as well as that of the trial court was provided by the statement that the Court merely reviewed and corrected the judgment rendered to the extent of the excess as to which "it may very well be said there is no evidence to sustain it," and

---

1. *Tennessee Coal & Ry. Co. v. Roddy,* 85 Tenn. 400, 5 S.W. 286 (1887), is an example validating that observation. The case was appealed after three trials. The first trial resulted in a verdict of $6,400. The trial judge suggested a remittitur of $3,400, but plaintiff refused to accept it and a new trial was ordered that resulted in a mistrial. On the third trial, the jury awarded plaintiff $8,000. The trial court declined to set aside the verdict but expressly refused to approve the amount saying in its final judgment, "but, to terminate the litigation in this case, the verdict is sustained, that the Supreme Court may pass on these facts, this court having tried the case for the third time." *Id.* at 402, 5 S.W. at 287.

that "while no court has any right to substitute its own estimate of the damages for that of a jury, yet it has the right to determine the amount beyond which there is no evidence, upon any reasonable view of the case, to support the verdict." *Id.* at 497, 498, 82 S.W. at 316.

The *Roberts* opinion was not well structured and has been misinterpreted in several subsequent cases, but, in our view, it clearly stands for the principles stated herein.

*Grant v. Louisville & Nashville Ry. Co.,* 129 Tenn. 398, 165 S.W. 963 (1913), involved a jury verdict of $3,500 damages in favor of Mrs. Grant. A remittitur of $1,500 suggested by the trial judge was accepted under protest by plaintiff. From the judgment in her favor of $2,000, Mrs. Grant appealed seeking restoration of the $3,500 jury verdict. Mrs. Grant's contentions on appeal were first, that there was nothing in the record to indicate or justify a finding that the jury was motivated by passion, prejudice or caprice and second, that the trial court was without authority to suggest a remittitur unless the verdict was so excessive as to evince passion, prejudice or caprice.

Responding to the first prong of plaintiff's attack, Mr. Justice Lansden, writing for the Court said:

"The deliberations of a jury are in secret, and no one can ordinarily know what considerations move them. The only evidence the court usually has of passion, prejudice, or caprice is the amount of the verdict. He is authorized to infer the existence of such improper influence from an excessive verdict alone. In this case, the trial judge, who saw the plaintiff and heard her injuries described, said that the verdict was so large as to indicate passion, prejudice, and caprice." *Id.* at 409–10, 165 S.W. at 966.

As to the second prong, the *Grant* court expressly affirmed *Telegraph Co. v. Frith, supra,* as the first Tennessee case to "distinctly" hold that a verdict so excessive as to show passion, prejudice or caprice might be cured by a remittitur and noted that it "has long been settled in Tennessee that a remittitur might be suggested by the court in cases where the verdict was merely excessive." *Id.* at 409, 165 S.W. at 965. The *Grant* court also observed that *Frith* had been referred to by a text writer as an exceptional case carrying the doctrine of curing verdicts improperly influenced to a further extent than other courts had gone, but, said the *Grant* court, the practice was "firmly established in Tennessee." *Id.* at 408, 165 S.W. at 965.

Perhaps, in addition to the thirteen years of time intervening after *Frith,* the Court had in mind the legislative sanction to curing verdicts improperly influenced, provided by the enactment of 1911 Tennessee Public Acts, chapter 29. That Act authorized plaintiffs to accept a remittitur, under protest and appeal, whereas theretofore, plaintiff's only option other than acceptance was a new trial. Manifestly, the statute recognized and sanctioned the judicially approved practice of curing verdicts that were so excessive as to "indicate passion, prejudice, corruption, partiality, or unaccountable caprice on the part of the jury." Williams Tennessee Code §§ 8987, 8988. In *Ezell v. Post Sign Co., Inc.,* 30 Tenn.App. 256, 205 S.W.2d 13 (1947), the Court of Appeals held that plaintiff was not entitled to a review of a remittitur granted on the ground of excessiveness only, because the express language of the 1911 Act was said to limit review, after acceptance under protest, to excessive verdicts indicating passion, prejudice or caprice. *Waller v. Skelton,* 186 Tenn. 433, 211 S.W.2d 445 (1948) was to the same effect, and shortly thereafter the Legislature amended the 1911 Act substituting the phrase "should be reduced" in the place and stead of "is so excessive as to indicate passion, prejudice, corruption, partiality, or unaccountable caprice on the part of the jury," thereby authorizing appellate review of remittiturs on both grounds, to wit, excessiveness only or passion, prejudice or caprice.

No Supreme Court case has altered the authority of the Courts, trial or appellate, to cure by remittitur verdicts so excessive

as to indicate passion, prejudice or caprice since the triology of *Frith, Roberts,* and *Grant* and 1911 Tennessee Public Acts, chapter 29.

In *Kaiser v. Cannon, supra,* the Court of Appeals was confronted with a plaintiff's appeal from a jury verdict of $2,500 for Kaiser's personal injury that the trial court found inadequate, suggesting an additur of $6,500. Plaintiff accepted the additur under protest and on appeal contended that the granting of an insufficient additur by the Court of Appeals as a substitute for a new trial violated his constitutional right to trial by jury. Although the trial court found mere inadequacy of the verdict, the Court of Appeals proceeded to treat the case as involving a finding by the trial court that passion, prejudice or caprice provided the basis for the additur. The Court of Appeals launched upon an exhaustive review of authorities purportedly to determine the sole issue of whether a plaintiff who is not expressly granted a right of appeal under our additur statute suffered a constitutional deprivation when the trial court awarded him an insufficient additur. The Court of Appeals concluded its legal analysis with the pronouncement that where

"a jury award is so low as to evince prejudice, passion, or caprice a denial of a new trial by the Circuit Judge on the ground that defendant has accepted a suggested additur violates plaintiff's right to trial by jury, in the absence of plaintiff's consent to the amount of the additur." 529 S.W.2d at 243.

The Court then proceeded to embrace the entire spectrum of remittitur and additur by the additional holding that

"[i]f the verdict of the jury is the result of misconduct, such as passion, prejudice or caprice, then the aggrieved party has not had a jury trial as contemplated by the constitutional guaranty and such denial of a jury trial may not be constitutionally corrected by an additur or remittitur not accepted by both parties." *Id.* at 244.

Upon examination of the facts in *Kaiser* the Court of Appeals found no indication of passion, prejudice or caprice on the part of the jury and affirmed the amount of the additur awarded by the trial judge.

We are unwilling to concur in that decision, insofar as it embraces verdicts said to result from passion, prejudice or caprice, grounded solely on the size of the verdict, unaccompanied by any extrinsic evidence of passion, prejudice or caprice. Of course, any verdict shown to be tainted by any misconduct of one or more jurors that taints or corrupts the verdict, can only be cured by a new trial. The legal issue of a plaintiff's rights where the trial court suggests an additur, deemed insufficient by plaintiff, the only question that could appropriately have been addressed in *Kaiser,* if its consideration of the facts had not foreclosed it, we reserve for decision at such time as that issue is properly before this Court.

As is clearly implicit in this opinion, the practice of curing excessive verdicts by remittitur, whether thought to be excessive only, or "patently" or "shockingly" excessive and thus evincing passion, prejudice or caprice, has been consistently approved by this Court since the turn of the century. The practice has been used to avoid retrials in literally hundreds of cases. We find no sound basis for reverting to the early nineteenth century view that was predicated upon first, the lack of familiarity of the courts in dealing with personal injury awards and second the legal rationale that since the law prescribed no fixed rule of damages for pain and suffering, the amount of personal injury awards must be left exclusively to the jury. The suggestion of constitutional deprivation is, in our opinion, completely negated by the facts that in such cases a jury has decided the issue of liability and that the role of the courts in adjusting the amount of the award to the range of "reasonableness" is an appropriate time-honored judicial function of conforming the verdict to the proof "beyond which there is no evidence . . . to support the verdict." *Railroad v. Roberts,* 113 Tenn. at 498, 82 S.W. at 316.

■ Where either remittitur or additur is used, the choice of a new trial and new jury or appellate review is available to the party in whose favor the adjustment is made, and appellate review is available to the other party where the appellate courts may either adjust the verdict to conform to the evidence if statutorily and judicially authorized to do so, and, where not, a new trial may be granted.

■ Finally, an examination of the judicial process necessarily involved in a finding that a jury verdict is tainted by passion, prejudice or caprice, based upon the size of the award alone, requires first, that the line marking the upper limit of the range of reasonableness be established, and second, that the line marking the upper limit of the range of mere excessiveness be established, beyond which, theoretically, would lie the passion, prejudice and caprice range. No court, to our knowledge, has been so bold as to suggest any definitive guidelines for determining the upper limits of the range of mere excessiveness, and we decline to attempt such a precarious adventure. It is inevitable therefore that the validity of a finding that a jury verdict evidences passion, prejudice or caprice from the size alone is always suspect and with justification could be characterized as an arbitrary basis for the imposition upon the parties and the judicial system of a new trial.

In *Jenkins v. Commodore Corp. So.*, 584 S.W.2d 773 (Tenn.1979), the jury returned a verdict of $250,000 for the wrongful death of a two-year-old boy burned to death in a fire that destroyed the mobile home in which his family resided. The trial court suggested a remittitur of $100,000 on the grounds of excessiveness only, which was accepted by plaintiffs. On defendant's appeal, claiming the verdict to be the result of passion, prejudice or caprice, the Court of Appeals finding the verdict, "shockingly excessive" and the period of deliberations brief, concluded that the verdict was the result of passion, prejudice or caprice. This Court granted plaintiff's petition for certiorari and concluded that the liability issue was clear cut and sharply drawn and that

no conclusion of jury misconduct was justified from the period of deliberation. We agreed that the jury verdict was excessive, but finding no extrinsic evidence of jury misconduct, the Court could not conclude solely from the amount that any undue emotion, prejudice or improper motive was indicated.

■ In the instant case, it is clear that the Court of Appeals' conclusion that the verdict was the result of passion, prejudice or caprice rests entirely on the size of the verdict which it considered was "patently" excessive. Our examination of the record also fails to disclose any extrinsic evidence of jury misconduct. In *Jenkins* the trial judge cured the excessiveness of the verdict and we affirmed. Here the Court of Appeals gave no consideration to curing the excessiveness, relying upon *Kaiser v. Cannon, supra.*

We remand this case to the Court of Appeals for such action as it may deem appropriate pursuant to T.C.A. § 27–118 and § 27–119. The costs in this Court are adjudged against defendants.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.