IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 21, 2007 Session

## JOHN WAYNE WEBB v. BRANDON O. CANADA, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-740-04     Harold Wimberly, Judge**

**No. E2006-01701-COA-R3-CV  - FILED MAY 25, 2007**

John Wayne Webb was injured in a car wreck and filed suit against two other drivers. A jury found defendant Brandon O. Canada to be solely at fault and awarded Mr. Webb $723,426.27 in compensatory damages against Mr. Canada. An order was entered awarding Mr. Webb judgment against Mr. Canada in the amount of $723,426.27 and dismissing the case as to the other driver, Douglas D. Townsend. Mr. Canada filed a motion seeking a new trial or in the alternative, a remittitur. Following a hearing, the trial court suggested a remittitur in the amount of $125,000. Final judgment was entered on July 24, 2006, referencing the remittitur and reducing the amount of the judgment to $598,426.27. On appeal, Mr. Canada argues that he is entitled to a new trial because Mr. Webb never accepted the remittitur, the verdict was excessive, and the remittitur was inadequate. After review, we find no error and affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., joined. HERSCHEL P. FRANKS, P.J., filed a concurring opinion.

James Y. (Bo) Reed, Knoxville, Tennessee, for the Appellant, Brandon O. Canada.

Billy J. Stokes, Knoxville, Tennessee, for the Appellee, John Wayne Webb.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the Appellee, Douglas D. Townsend.

# OPINION

## I. Background

Mr. Webb was injured in a car wreck at an intersection in Knoxville on December 15, 2003. At the time of the collision, Mr. Webb's vehicle was in the middle turning lane for eastbound Kingston Pike traffic, waiting to turn left onto Campbell Station Road. Another vehicle driven by Douglas Townsend was stopped on Campbell Station Road, waiting to turn right (west) onto Kingston Pike. After Mr. Townsend made his right turn, Mr. Webb's vehicle collided with a vehicle driven by Mr. Canada, which was traveling towards Mr. Webb westbound on Kingston Pike.

Mr. Webb filed suit against Mr. Canada and Mr. Townsend, and the case was tried before a jury. The jury found in favor of Mr. Webb against Mr. Canada, but found no liability on the part of Mr. Townsend. The jury awarded Mr. Webb damages in the amount of $723,426.27. Judgment was entered on June 9, 2006, reflecting the jury verdict against Mr. Canada and dismissing the claim against Mr. Townsend. Mr. Canada filed a motion 10 days later asking for a new trial and/or to alter or amend the judgment, or, in the alternative, for a remittitur. After a hearing, the trial court entered an order on July 24, 2006, which found that there was evidence to support the jury's verdict of 100 percent fault as to Mr. Canada; suggested a remittitur in the amount of $125,000; awarded discretionary costs to Mr. Webb; and further provided:

> IT IS ORDERED, ADJUDGED AND DECREED that the jury's verdict and the Judgment entered on June 9, 2006 regarding liability in this cause shall not be disturbed; that the Court suggests a remittitur of One Hundred Twenty-Five Thousand Dollars ($125,000.00) of the verdict awarded to the plaintiff, John Wayne Webb, thereby reducing the Judgment entered June 9, 2006, to Five Hundred Ninety-Eight Thousand Four Hundred Twenty-Six and 27/100 Dollars ($598,426.27) . . . .

On August 9, 2006, Mr. Canada filed a Notice of Appeal.

## II. Issues

The issues we address in this appeal are:

1. Whether the Plaintiff, Mr. Webb, failed to accept the remittitur such that a new trial is required.

2. Whether the jury verdict was patently excessive and arrived at by the jury out of passion, prejudice, and unaccountable caprice, thereby requiring a new trial, or, in the alternative, whether the remittitur was inadequate.

### III. Analysis

### A. Acceptance of the Remittitur

The first issue raised by Mr. Canada involves the proper procedure for responding to a suggestion of a remittitur. Mr. Canada asserts in this appeal that Mr. Webb failed to accept the suggestion of a remittitur by a juristic act, and therefore, the trial court should have granted a new trial.

In this personal injury case, calculation of Mr. Webb's damages was within the province of the jury. However, pursuant to Tenn. Code Ann. § 20-10-102, the trial court had the authority to suggest a remittitur of the verdict if the trial court found that the verdict was excessive. Because the trial court found the verdict was excessive, the statute governing remittitur, Tenn. Code Ann. § 20-10-102, was applicable. This statute provides as follows:

> (a) In all jury trials had in civil actions, after the verdict has been rendered, and on motion for a new trial, when the trial judge is of the opinion that the verdict in favor of a party should be reduced, and a remittitur is suggested by him on that account, with the proviso that in case the party in whose favor the verdict has been rendered refuses to make the remittitur a new trial will be awarded, the party in whose favor such verdict has been rendered may make such remittitur under protest, and appeal from the action of the trial judge to the court of appeals.

The trial court suggested a remittitur of the verdict, and therefore Mr. Webb, the party in whose favor the verdict was rendered, had the choice of 1) rejecting the remittitur in which case a new trial would be granted, 2) accepting the remittitur, or 3) accepting the remittitur under protest and appealing the trial court's finding that the verdict was excessive. A new trial would only have been granted if Mr. Webb had chosen to reject the remittitur. Mr. Canada, the party against whom the verdict was rendered, had the option of appealing the adequacy of the remittitur after Mr. Webb accepted it. *City of Gatlinburg v. Fox,* 962 S.W.2d 479 (Tenn. 1998).

Since the trial court does not order a remittitur but merely suggests it, the party whose jury verdict is being reduced must indicate its acceptance of the remittitur by a juristic act of acceptance, either orally or in writing. Mere silence does not constitute an act of acceptance. *Evans v. Wilson,* 776 S.W.2d 939, 941 (Tenn. 1989). A "juristic act" is defined by Black's Law Dictionary, 8th ed., as an "act in the law," which is "an act that is intended to create, transfer, or extinguish a right and that is effective in law for that purpose; the exercise of a legal power."

We find that Mr. Webb did perform a juristic act of acceptance of the remittitur when his attorney approved and signed the final judgment that referenced the remittitur and reduced the previous judgment from $723,426.27 to $598,426.27. Although Mr. Webb would have been better

served by filing a separate written acceptance of the remittitur, *6 Tenn. Prac., Civil Procedure Forms* § 59:28 (2007), his failure to do so is not determinative because it is evident to us from the record that he did accept the remittitur. Initially, a judgment was entered which awarded Mr. Webb $723,426.27 against Mr. Canada. Then, a "final judgment" approved by all counsel of record and signed by the trial judge was entered which reduced this judgment to $598,426.26. Within 16 days of its entry, Mr. Canada appealed the "final judgment." If there was never any acceptance of the remittitur, then there was no final judgment from which to appeal. Mr. Canada's filing of a notice of appeal is an implicit recognition of Mr. Webb's acceptance of the remittitur and the completion of the case at the trial level. Mr. Webb argues on appeal that he accepted the remittitur. It would be a waste of judicial and legal resources to remand this case to the trial court so that Mr. Webb could file a separate written statement accepting the remittitur, when it is evident that he did so in the final judgment.

Mr. Canada argues that the Tennessee Supreme's Court ruling in ***Evans v. Wilson**, 776 S.W.2d 939*, requires a juristic act of acceptance and that Mr. Webb failed to perform such an act. We agree that ***Evans*** requires such an act, but ***Evans*** is factually distinguishable from the case at bar. In ***Evans***, the jury returned a verdict in favor of the plaintiffs for $3,000. The plaintiffs filed a motion for a new trial or, in the alternative, a request for an additur. The trial court on October 3, 1986, entered an order suggesting an additur of $9,000 and stating that the plaintiff would be entitled to a new trial if the defendant failed to accept the additur. The defendant, who had the choice to accept or reject the additur, did nothing. No further order was entered which increased the verdict or granted a new trial. The plaintiffs filed a notice of appeal on October 16, 1986. The Supreme Court ruled that a trial judge in suggesting an additur or remittitur must establish a time frame in which the defendant may accept the suggestion. If the suggestion is not accepted within the time specified, then the suggestion will be deemed rejected. The high court further ruled that there was no appealable order because the order suggesting an additur was a provisional order, not a final order from which an appeal as of right lies. Because no final order denying the motion for new trial had been entered, the time for filing the notice of appeal had not begun to run and the appeal was dismissed.

In the case at bar, we have a final order which reduces the previous judgment by the amount of $125,000. It is not merely a suggestion of a remittitur as in ***Evans***, but rather the suggestion of the remittitur and the implementation of the remittitur. Unlike the defendant in ***Evans*** who did nothing, Mr. Webb, through his counsel, approved a final order which somewhat inartfully, but effectively, noted his assent of the remittitur and reduced the judgment.

Mr. Canada also argues that the trial court erred in not overruling the motion for a new trial, citing the language in ***Evans*** that "once the defendant accepts the suggestion of additur..., the trial court then enters an order making the prior jury verdict plus the additur the judgment of the court. That order should also deny the motion for new trial, an order appealable by the Plaintiff." ***Evans,*** 776 S.W.2d at 941. Although the final judgment in this case could have been better worded, we think it does convey the intent of the parties and the trial court. The trial court was asked by Mr. Canada to grant a remittitur or in the alternative, a new trial. Since this is an "either or" proposition,

once the trial court suggested the remittitur, it necessarily follows that the trial court did not grant the new trial. We note further that Mr. Canada's counsel approved the order which he now argues was incorrect. If the trial court had failed to rule on his motion for new trial, Mr. Canada should have brought it to the trial court's attention then. We hold that there was substantial compliance with Tenn. Code Ann. § 20-10-102 and case law concerning the acceptance of a remittitur, and the final judgment evidenced Mr. Webb's acceptance of the remittitur and was an appealable final order.

### B. Reasonableness of the Award and the Remittitur

Mr. Canada argues that the verdict was so excessive that it must have been the result of passion, prejudice, and unaccountable caprice on the part of the jury, and therefore, a new trial is required. In the alternative, Mr. Canada contends that the trial court's remittitur was not adequate. We disagree with both contentions.

A trial court may constitutionally correct an excessive verdict by remittitur where a party alleges that the excessive verdict is the result of the jury's passion, prejudice, and unaccountable caprice, provided that the allegation is based solely on the size of the award and there is no extrinsic evidence of such passion, prejudice, or caprice. *Pitts v. Exxon Corp.*, 596 S.W.2d 830, 835 (Tenn. 1980). In reaching this conclusion, the Supreme Court stated that "the practice of curing excessive verdicts by remittitur, whether thought to be excessive only, or 'patently' or 'shockingly' excessive and thus evincing passion, prejudice or caprice, has been consistently approved by this Court since the turn of the century." *Id.* In the absence of extrinsic evidence of juror misconduct, remittitur is a constitutionally acceptable means of correcting an excessive jury verdict. *Id.* Upon reviewing the record in the case at bar, we find no evidence that the jury's verdict was the result of passion, prejudice, or unaccountable caprice, nor did Mr. Canada offer any such evidence. Therefore, we do not find that Mr. Canada was entitled to a new trial on this basis.

We now turn our attention to the remittitur suggested by the trial court and accepted by Mr. Webb, which reduced the jury's verdict of $723,426.27 by $125,000, resulting in a judgment of nearly $600,000 against Mr. Canada. Trial courts are encouraged to utilize the remedy of remittitur to cure an excessive jury verdict, because remittitur avoids the costly and time-consuming alternative of ordering a new trial. *Thrailkill v. Patterson*, 879 S.W.2d 836, 840 (Tenn. 1994). When reviewing an award reduced by remittitur, we engage in a three-part analysis:

> First, we examine the reasons for the trial court's action since adjustments are proper only when the court disagrees with the amount of the verdict. Second, we examine the amount of the suggested adjustment since adjustments that "totally destroy" the jury's verdict are impermissible. Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment.

*Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990) (internal citations omitted).

-5-

In its order, the trial court stated that it agreed with the jury on the assessment of liability and would not disturb that finding. The trial court then went on to suggest a remittitur in the amount of $125,000. We are thus satisfied that the basis for the trial court's action was proper.

Next, we must decide whether the $125,000 remittitur totally destroyed the jury's verdict of nearly $725,000. We find that it does not. The remittitur in this case reduces the award to Mr. Webb by approximately 20 percent. While we decline to establish any particular percentage that would indicate a remittitur that has totally destroyed a jury verdict, we note that much larger remittiturs by percentage have been found acceptable by this Court and the Supreme Court of our state. *See, e.g.*, *Palanki v. Vanderbilt University*, 215 S.W.3d 380 (Tenn. Ct. App. 2006) (remittitur reducing award from $16 million to $6.5 million did not totally destroy jury's verdict – 59 percent reduction); *Grandstaff v. Hawks*, 36 S.W.3d 482 (Tenn. Ct. App. 2000) (upholding remittitur reducing award from $138,218.37 to $75,000 – 45 percent reduction); *Steele v. Ft. Sanders Anesthesia Group, P.C.*, 897 S.W.2d 270 (Tenn. Ct. App. 1994) (upholding a 40 percent remittitur); *Jenkins v. Commodore Corp. S.*, 584 S.W.2d 773 (Tenn. 1979) (upholding remittitur of $100,000 from $250,000 verdict – 40 percent reduction). On the other hand, cases in which a trial court's remittitur or additur was reversed because it totally destroyed the jury's verdict are few and far between. In *Foster v. Amcon Int'l, Inc.*, the Tennessee Supreme Court reversed a trial court's additur that would have increased the plaintiff's award from $500 to $15,000. 621 S.W.2d 142, 148 (Tenn. 1981). In doing so, the Court stated that "to suggest an additur thirty times that of the jury's verdict . . . totally destroys the jury's verdict." *Id.* In *Guess v. Maury*, we held that a remittitur of 75 percent destroyed the jury's verdict and reversed for a new trial. 726 S.W.2d 906, 913 (Tenn. Ct. App. 1986). Likewise, in *Myers v. Myers*, we found that a 70 percent remittitur totally destroyed the jury's verdict. No. E2004-02135-COA-R3-CV, 2005 WL 1521952, at *1 (Tenn. Ct. App. E.S., filed June 27, 2005). Following a thorough examination of the relevant case law, we find that the 20 percent remittitur suggested by the trial court in the case at bar did not totally destroy the jury's verdict.

Moving on to the third part of our analysis, we must now examine the evidence as to Mr. Webb's damages to determine whether the evidence preponderates against the trial court's remittitur of $125,000 to render a judgment of nearly $600,000 in favor of Mr. Webb.

Before the automobile accident, Mr. Webb was employed by BWXTY-12 in Oak Ridge as a machine cleaner. The job required him to remove metal clippings from a turntable and place the clippings into 55-gallon barrels, which were then loaded onto a dolly and moved to a loading dock. At the dock, Mr. Webb and his co-workers drained the coolant out of the barrels, leaving only the metal pieces, and lifted or rolled the barrels onto a scale to be weighed. They then cleaned the outside of the barrels to remove any contamination before the barrels were transported from the facility. Mr. Webb's job required heavy lifting, up to 164 pounds at times, and also involved a great deal of standing, bending, and reaching. He earned $16.99 per hour.

As a result of the collision between his vehicle and Mr. Canada's automobile, Mr. Webb sustained a fracture of the second lumbar vertebra. Dr. Merrill White, an orthopedic surgeon who treated Mr. Webb, testified that Mr. Webb had a 20 percent loss in anterior column height as a result

of his injury. Dr. White put Mr. Webb in a back brace to help stabilize his spine while it healed. Dr. White also referred Mr. Webb to a physical therapist for treatment, which he continued for about five months. In April of 2004, Dr. White released Mr. Webb from his care and advised him to continue therapy and his exercise program at home. Dr. White also placed permanent restrictions on Mr. Webb's return to work, as follows: lift a maximum of 50 pounds; avoid repetitive bending and stooping; and alternate sitting and standing. Dr. White assigned Mr. Webb a 5 percent whole body impairment based on guidelines promulgated by the American Medical Association.

Mr. Webb has not worked since the accident. Cheryl Sands, staffing manager for BWXTY-12, testified that Mr. Webb was not able to return to his former job because of the work restrictions placed on him by his physician. She further stated that no positions were available at the facility for a person with Mr. Webb's experience, job skills, and medical restrictions.

Vocational expert Rodney Caldwell testified that the jobs for which Mr. Webb is now qualified, due to his medical restrictions and work experience, would pay around $7 per hour, which is less than half of what Mr. Webb was paid as a machine cleaner at BWXTY-12. Robert Allen Boehm, an economics professor at the University of Tennessee, testified that if Mr. Webb never returns to work, his lost earnings, including employer benefits, would total $210,614. Mr. Boehm calculated this figure by assuming that Mr. Webb would work until he could retire with full social security benefits, which would have been at the age of 65 years, 10 months. Mr. Webb was 61 years old at the time of the accident.

At trial, which occurred nearly two and a half years after the automobile accident, Mr. Webb testified that he still has pain in his back, but it is not as severe as it was right after the accident. He also testified that he has pain if he has to sit for long periods of time, but the pain eases if he is able to "get up and walk around for a little bit." Mr. Webb also testified that he used to enjoy playing softball and golf, but he can no longer participate in those activities because of his pain.

The parties stipulated that Mr. Webb incurred medical expenses of $12,812.27 as a result of the automobile accident.

On appeal, Mr. Canada argues that the remittitur suggested by the trial court was inadequate. The jury found Mr. Canada to be 100 percent at fault for the accident and awarded Mr. Webb $723,426.27 in damages. The trial court suggested a remittitur of $125,000, which was accepted by Mr. Webb, as we discussed above. As a result, judgment was entered against Mr. Canada in the amount of $598,426.27.

We treat a trial court's approval of an award for damages with great deference. The Supreme Court has opined that "[t]he amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence." *Thrailkill*, 879 S.W.2d at 841 (quoting *Reeves v. Catignani*, 7 S.W.2d 38, 39 (Tenn. 1928)). After careful review, we cannot agree with Mr. Canada's assertion that the trial court's remittitur was inadequate. Mr. Webb's lost earnings and medical expenses total more than

$223,000.[1] He continues to suffer pain from his spinal injury and will probably do so for the rest of his life. He can no longer pursue the recreational activities that he once enjoyed. Taking all of this into account, we do not find that the evidence preponderates against the judgment of $598,426.27 for Mr. Webb.

### IV. Conclusion

We hold that Mr. Webb accepted the $125,000 remittitur suggested by the trial court, thus resulting in a final judgment of $598,426.27 against Mr. Canada. We also find that a new trial is not required due to the excessiveness of the jury's verdict, and the trial court's remittitur was not inadequate. Therefore, we affirm the judgment of the trial court and remand this case to the trial court for collection of costs. Costs of appeal are taxed against the Appellant, Brandon O. Canada.

_____
SHARON G. LEE,  JUDGE

---

[1] In his brief, Mr. Canada argues that Mr. Webb could find another job, and his lost earning capacity should therefore be reduced by the amount that he could earn in the future. While this is possible, we find it highly improbable. Because of his medical restrictions, the only jobs for which Mr. Webb is now qualified pay little more than minimum wage. There may be many of these jobs available; however, Mr. Webb is now in his mid-60s, and the odds of him being hired for such a position do not appear likely.